Nina **RISINGER**, Plaintiff–Appellant,

v.

**OHIO BUREAU OF WORKERS' COMPENSATION and Barbara Riley, Defendants–Appellees.**

No. 88–3387.

United States Court of Appeals, Sixth Circuit.

Argued March 20, 1989.

Decided Aug. 24, 1989.

Louis A. Jacobs, James D. McNamara (argued), Columbus, Ohio, for plaintiff-appellant.

Raymond J. Studer, Asst. Atty. Gen. (argued), Columbus, Ohio, for defendants-appellees.

Before KRUPANSKY and NELSON, Circuit Judges, and PECK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Nina Risinger (Risinger) has appealed from the judgment of the United States District Court for the Southern District of Ohio, dismissing her cause of action against the Ohio Bureau of Workers' Compensation (Bureau) and her former supervisor, Barbara Riley (Riley). Nina Risinger, an employee of the Ohio Bureau of Workers' Compensation from 1979 until 1985, commenced the instant action on December 5, 1986 in the United States District Court for the Southern District of Ohio against the Bureau and Riley, alleging that the defendants had racially discriminated against her by subjecting her to a hostile work environment because she was an Oriental in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. §§ 1981 and 1983. In addition, Risinger charged a pendent state law tort claim alleging that these actions also constituted a common law tort of intentional infliction of emotional distress under Ohio law.

On February 22, 1988, the district court granted partial summary judgment in favor of the Bureau on the claims of intentional racial discrimination charged under 42 U.S.C. §§ 1981 and 1983; summary judgment in favor of Riley under Title VII; and summary judgment in favor of both the Bureau and Riley on the pendent state tort claim. The district court thereupon ordered the Title VII claims against the Bureau and the §§ 1981 and 1983 claims against Riley proceed to a bench trial.

On February 25, 1988, at the close of the appellant's case, the district court orally granted defendant's motion for dismissal

under Rule 41(b) of the Federal Rules of Civil Procedure. On April 4, 1988, the district court issued written findings of fact and conclusions of law supporting its judgment in favor of the defendants. The pertinent findings of fact were as follow:

### FINDINGS OF FACT

1. Plaintiff, Nina Risinger is of Chinese national origin.

2. Plaintiff began her employment with the Ohio Bureau of Workers' Compensation (hereafter Bureau) as a Data Operator in the Key Edit Section of the Data Processing Division on December 10, 1979. She continued in that position until her resignation effective March 8, 1985.

4. At times relevant, defendant Barbara Riley was the Supervisor of the Key Edit Section and served as plaintiff's immediate supervisor.

. . . .

9. Plantiff made a series of generalized allegations that she was treated differently because of her race and/or national origin. She contended she was subjected to name calling based on race and subjected to racially discriminatory treatment regarding visitors, phone usage, assignment to work outside of the Key Edit Section, and receipt of reprimands from her supervisor Barbara Riley, for eating at her desk and use of the restroom.

. . . .

15. With the exception of defendant Barbara Riley's admission that on one occasion she may have called plaintiff a "Chink", [sic] no testimony was presented that set forth any specifics regarding any of plaintiff's allegations of name calling. No testimony was presented that would establish who performed the alleged discriminatory actions, when any such actions or comments occurred, where it occurred, or even the circumstances surrounding the allegations of discrimination.

16. No testimony offered by any of plaintiff's co-workers clearly specified any racially derogatory comments or actions made in the presence of defendant, Barbara Riley or any other supervisory level employees of the Bureau.

17. Testimony from the plaintiff's witnesses established that, [sic] other individuals of non-Oriental nationality and race, both blacks and whites, were subjected to cutting or derogatory comments by their fellow workers.

18. Comments which may have been made about plaintiff were typical of the atmosphere of bantering back and forth among most or all of the employees in this employment situation.

19. Defendants made available numerous avenues for plaintiff to discuss her allegations of discrimination. Plaintiff spoke on numerous occasions with Sheila Alexander, Equal Employment Opportunity officer for the Bureau. She also spoke with several supervisory level employees including her immediate supervisor defendant Barbara Riley, Edward Meyers, Director of the Data Processing Section of the Bureau, and Charles Penner, Deputy Administrator of the Bureau.

20. Plaintiff's claims of discrimination were properly investigated and reasonable attempts were made to counsel plaintiff.

21. In February 1984, plaintiff met with Ed Meyers. Plaintiff told Mr. Meyers that she felt she was not being treated fairly by her fellow employees and states she had been called "names." Specifically, her complaint alleged that she believed she was not treated fairly regarding the use of a telephone in Key Edit Section. As a result of that meeting Mr. Meyers contacted the supervisors of the Key Edit Section and asked them to investigate plaintiff's complaints.

22. Results of the investigation revealed that the plaintiff's complaint about the telephone appeared to have resulted from a dispute the plaintiff had with a co-worker, regarding the answering of a telephone in the computer room. Regarding the plaintiff's

claim of name calling Mr. Meyers was informed of the circumstances surrounding the only incident of name calling that was identified. During the early stages of the plaintiff's employment, defendant Barbara Riley and the plaintiff were friends. Ms. Riley indicated that during this period, she and the plaintiff engaged in joking conversation. During that time Ms. Riley, in good nature, may have on one occasion, referred to the plaintiff as a "Chink."

23. A second meeting was held later during February of 1984, where Mr. Meyers advised the plaintiff of the findings of the investigation set forth above.

. . . .

25. On or about July 12, 1984 James Mayfield, the Administrator of the Bureau received a letter from Steven Clark, a representative of the Ohio Civil Service Employees Association. Mr. Clark's letter indicated that the plaintiff had made allegations that she had been subjected to racial slurs and discriminatory treatment at work.

26. Mr. Mayfield instructed his staff to conduct an investigation regarding this matter. As a result, Sheila Alexander, an Equal Employment Opportunity Officer of the Bureau, conducted an investigation. During the course of that investigation, she spoke with the plaintiff, the plaintiff's supervisors and seven of the plaintiff's co-workers. Some of the co-workers she spoke to were friends of the plaintiff while others were not.

27. As the result of the investigation conducted by Sheila Alexander, she determined that the plaintiff was not subject to discrimination. Rather, Ms. Alexander's finding was that the plaintiff's alleged difficulties were "due to differences in personality and perhaps her own sensitivity about her race, since she is the only Oriental in both units." In addition Ms. Alexander's findings stated that "documentation presented by Ms. Risinger did not show any incident of racial slurs since 1982."

. . . .

29. On or about November 28, 1984, the plaintiff requested a leave of absence from January 7, 1985 through June 7, 1985. The basis of that request was indicated to be "personal reasons."

. . . .

31. The plaintiff, on or about January 11, 1985, submitted a leave request for the period of January 7, 1985 through January 25, 1985, stating as the reason [sic] "for medical and child care."

. . . .

37. The plaintiff submitted a letter of resignation on or about February 25, 1985. The effective date of plaintiff's resignation was March 8, 1985.

## CONCLUSIONS OF LAW

10. Defendants took all reasonable steps to investigate and address plaintiff's claims of discrimination. No testimony was presented to show that plaintiff established something more than lack of respect or personality conflict between herself and her fellow employees.

12. Plaintiff failed to present evidence that would establish a *prima facie* case of discrimination. The defendants have violated no statutory or constitutional rights of the plaintiff.

13. Plaintiff claims her resignation was not voluntary and was constructive in nature. A finding of constructive discharge requires the determination that working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign. . . .

14. Plaintiff has failed to present evidence that would support a finding that any reasonable person in plaintiff's shoes would have been compelled to resign.

*Findings of Fact and Conclusions of Law of District Court of April 4, 1988.* In sum, the district court granted an order of dismissal in favor of both defendants, con-

cluding that the appellant had failed to prove a *prima facie* claim for racial discrimination against the defendants under any of the following theories: intentional disparate conditions of employment and benefits under Title VII and Sections 1981 and 1983; a racially hostile work environment under Title VII or Sections 1981 and 1983; and constructive discharge under Title VII. On April 29, 1988, Risinger timely filed an appeal from the district court's order of dismissal of her claim and charged that the district court erred in concluding that she had failed to prove a *prima facie* case to support her assertions of a racially hostile work environment under Title VII and Section 1983 and, accordingly, in granting the defendant's motion for dismissal under Rule 41(b).

In her complaint, Risinger had alleged a cause of action against the defendants, charging the existence of a racially hostile working environment under 42 U.S.C. §§ 1981 and 1983, and under Title VII of the 1964 Civil Rights Act. The Supreme Court's decision in *Patterson v. McLean Credit Union*, 491 U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) clearly precludes any cause of action under 42 U.S.C. § 1981 for racial harassment within a hostile working environment. *See Patterson*, 491 U.S. at ——, 109 S.Ct. at 2369 ("We hold ... that racial harassment relating to the conditions of employment is not actionable under § 1981...."); *id.* at ——, 109 S.Ct. at 2373 ("[W]e agree with the Court of Appeals that petitioner's racial harassment claim is not actionable under § 1981."). The appellant's racially anchored claim arising from a hostile working environment is, however, cognizable under Title VII, *Patterson*, 491 U.S. at ——, 109 S.Ct. at 2374 ("Racial harassment in the course of employment is actionable under Title VII's prohibition against discrimination in the 'terms, conditions, or privileges of employment.'"), and under 42 U.S.C. § 1983. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 788, 102 L.Ed.2d 780 (1989).

▪ Rule 41(b) of the Federal Rules of Civil Procedure expressly authorizes a trial court, in a bench trial, to enter an order of dismissal where the plaintiff's evidence has failed to support a cause of action.

After the plaintiff, in an action tried by the court without a jury, has completed the presentation of evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence. If the court renders judgment on the merits against the plaintiff, the court shall make findings as provided in Rule 52(a). Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

Fed.R.Civ.P. 41(b). The standard for appellate review from a district court's dismissal under Rule 41(b) is to determine if the trial court's factual conclusions were clearly erroneous.

In reviewing a Rule 41(b), [sic] dismissal in which the lower court has made findings of fact, ... the standard is the same as that for reviewing findings of fact by a court following a full trial.... That is, the appellate court may not disturb the lower court's conclusion unless clearly erroneous.

*Hersch v. United States*, 719 F.2d 873, 877 (6th Cir.1983) (citations omitted); *Haskell v. Washington Township*, 864 F.2d 1266, 1274 (6th Cir.1988) (same); *see also Sullivan v. City of Cleveland Heights*, 869 F.2d 961, 963 (6th Cir.1989) (per curiam); *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir.1987); *D.E. Rogers Assoc., Inc. v. Gardner–Denver Co.*, 718 F.2d 1431, 1434 (6th Cir.1983), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984); *Marr v. Rife*, 503 F.2d 735, 740 (6th Cir. 1974); *Simpson v. United States*, 454 F.2d 691, 692 (8th Cir.1972) (per curiam). *See*

*generally* 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2376, at 248 (1971) ("The usual standards are applicable to review a judgment on the merits in a nonjury case are controlling. The conclusions of law are freely reviewable, although the findings of fact of the trial court cannot be set aside unless they are clearly erroneous.") (footnotes omitted).

A review of the district court's following findings of fact, as reflected in its memorandum, with the record of the testimony developed during the trial discloses disparities of consequence.

9. Plaintiff made a series of generalized allegations that she was treated differently because of her race and/or national origin ... [and that] she was subjected to name calling based on race....

15. With the exception of defendant Barbara Riley's admission that on one occasion she may have called plaintiff a "Chink", [sic] no testimony was presented that set forth any specifics regarding any of plaintiff's allegations of name calling. No testimony was presented that would establish who performed the alleged discriminatory actions, when any such actions or comments occurred, where it occurred, or even the circumstances surrounding the allegations of discrimination.

. . . .

20. Plaintiff's claims of discrimination were properly investigated and reasonable attempts were made to counsel plaintiff.

*Findings of Fact and Conclusions of Law of District Court of April 4, 1988.*

Established precedent teaches that "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 499, 104 S.Ct. 1949, 1959, 80 L.Ed.2d 502 (1984) (quoting *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)); *accord Anderson v. City of Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (same); *Connaughton v. Harte Hanks Communications, Inc.,* 842 F.2d 825, 829 (6th Cir.1988) (same), *aff'd,* — U.S. —, —, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989); *Sewell v. Jefferson County Fiscal Court,* 863 F.2d 461, 466–67 (6th Cir.1988) (same), *petition for cert. filed,* 57 U.S.L.W. 3843 (U.S. May 8, 1989) (No. 88–2037). In its factual findings in the case at bar, the district court concluded, *inter alia,* that Risinger had merely testified to "generalized allegations that ... she was subjected to name calling based on race," and that the appellant had failed to introduce any testimony which identified specific instances of racially abusive language. The record, however, reflects that appellant identified numerous specific episodes of racially derogatory dialogues, and that she repeated the substance of the comments, together with the individuals allegedly responsible for the statements and the circumstances when they were made. Moreover, the testimony indicated that the appellant's immediate superviser, Riley, had conceded that she referred to Risinger, on at least one occasion, as a "chink," and that another supervisor, Donna Diggs (Diggs), had referred to Risinger as "tight eye."

In particular, Risinger testified that two of Risinger's fellow data entry operators, Janet Thomas (Thomas) and Wanda Windell (Windell) had called her a damn foreigner and implied that other data entry operators disliked her and wished that she would leave the Bureau. Appellant also related derogatory racial slurs that were directed to her personally by coworkers Evelyn White (Evelyn White), Barbara Hines (Hines), Yvonne White (Yvonne White) and Brenda Boley (Boley). Pam Kimberly Wright (Wright), Beverly Chatters (Chatters) and Loretta Williamson (Williamson) corroborated appellant's accusations and confirmed the substance, character, time and place of the pervasive remarks directed to appellant.

■ The above referenced testimony of Risinger, Chatters, Williamson and Kimberly leaves this reviewing court "with the

definite and firm conviction that" the district court's factual conclusion, namely that "[w]ith the exception of defendant Barbara Riley's admission that on one occasion she may have called plaintiff a 'Chink', [sic] *no testimony* was presented that would establish who performed the alleged discriminatory actions, when any such actions or comments occurred, where it occurred, or even the circumstances surrounding the allegations of discrimination," was clearly erroneous.[1] *Bose Corp.*, 466 U.S. at 499, 104 S.Ct. at 1959; *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511; *Sewell*, 863 F.2d at 466–67; *Connaughton*, 842 F.2d at 829. The unchallenged testimony of Risinger, and that of her witnesses, has demonstrated that the racially oriented remarks in the instant case "resulted not from a single or isolated offensive incident, comment, or conduct, but from incidents, comments, or conduct that occurred with some frequency," *Rabidue v. Osceola Ref. Co.*, 805 F.2d 611, 620 (6th Cir.1986), *cert. denied*, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987); *Highlander v. K.F.C. Nat'l Mgmt. Co.*, 805 F.2d 644, 650 (6th Cir.1986), which statements constituted sufficient evidence to establish a *prima facie* case of a racially hostile working environment under existing case precedent.

In similar fashion, the district court's factual conclusion that "Plaintiff's claims of discrimination were properly investigated" was also clearly erroneous in light of the direct testimony to the contrary given by Barbara Riley (Riley), the appellant's immediate supervisor at the Bureau who acknowledged having called Risinger a "chink" on at least one occasion, and that given by Sheila Alexander (Alexander), the state Equal Employment Opportunity Officer assigned to investigate reports of possible employment discrimination at the Bureau.

The uncontroverted testimony of Alexander disclosed that, although Risinger had made at least ten complaints to her beginning in 1981, no formal or informal investigation into the reported racial comments was undertaken by Alexander until three years later in 1984.

ATTORNEY: In 1981 you did not conduct an informal investigation, did you?

. . . .

ALEXANDER: I would say I did not conduct an informal investigation.

ATTORNEY: You have no report in any of your records of such an investigation, do you?

ALEXANDER: No.

ATTORNEY: You don't have any recall today of such an investigation?

ALEXANDER: No.

ATTORNEY: In fact, the only investigation in your file shows that was done, was one done 3 years later, in 1984, isn't that correct?

ALEXANDER: Correct.

■ Although Risinger had frequently reported to Riley that other employees were engaging in a continuing pattern of racially motivated comments and actions, Riley failed to initiate any meaningful action to investigate or rectify the conditions.

ATTORNEY: Nina complained to you that a co-worker named Brenda Boley was picking on her, didn't she?

RILEY: Yes, she did.

ATTORNEY: Nina also told you at various times that other girls in the Department were calling her names, didn't she?

. . . .

RILEY: Yes.

ATTORNEY: So you were put on notice that there was name-calling there in the Department?

**1.** In light of the district court's general conclusion that *"no* testimony was presented" evidencing specific instances of racially predicated harassment directed towards Risinger, without expressly commenting upon the issue of witness credibility and without questioning the credibility of Risinger or her corroborating witnesses, the instant appeal does not implicate "the opportunity of the trial court to judge the credibility of the witnesses." *Sewell*, 863 F.2d at 467 (quoting Fed.R.Civ.P. 52(a)) (footnote omitted); *accord Bose Corp.*, 466 U.S. at 499–500, 104 S.Ct. at 1959; *Connaughton v. Harte Hanks Communications, Inc.*, 842 F.2d at 829, *aff'd*, —— U.S. at ——, 109 S.Ct. at 2696.

RILEY: Yes.

ATTORNEY: Nina told you that some of her co-workers were making comments toward her that she found offensive and hurt her feelings, isn't that right?

RILEY: That's possible.

ATTORNEY: One of the comments that she specifically mentioned to you was the use of the word chink, that as a Chinese person she found that to be offensive, true?

RILEY: She did not tell me it was offensive at the time I said it....

. . . .

ATTORNEY: Nina told you that some of her co-workers had specifically used the word chink toward her, isn't that true?

RILEY: That's possible.

. . . .

ATTORNEY: But you were put on notice more than once by Nina that these words were being used toward her?

RILEY: Yes.

ATTORNEY: She also told you that she wanted you to do something about it, didn't she?

RILEY: Yes.

. . . .

ATTORNEY: [Y]ou don't deny that you yourself might have called Nina a chink, that's accurate, isn't it?

RILEY: That's true.

ATTORNEY: And you never investigated other co-workers to determine if they had overheard such comments, did you?

RILEY: No.

ATTORNEY: Not once?

RILEY: No.

ATTORNEY: In fact, you never made any investigations of those racial statements the whole time that Nina worked under you, did you?

. . . .

RILEY: That's true.

. . . .

ATTORNEY: Had you done a formal investigation, you might have questioned other people that worked in the section to see what they heard, correct?

RILEY: Right.

ATTORNEY: You never did that?

RILEY: No.

ATTORNEY: It was your job as the supervisor to look into these complaints, wasn't it?

RILEY: Yes.

ATTORNEY: And your failure to interview any other persons in the Department or do what you now called a formal investigation was simply a lack of supervision on your part, wasn't it?

. . . .

RILEY: If you want to say it, you can say it was a lack of supervision.

. . . .

ATTORNEY: Ms. Riley, Nina told you that these things hurt her feelings, didn't she?

RILEY: Yes.

ATTORNEY: Were you able to see her physical demeanor when she explained these matters to you, how she looked?

RILEY: Yes.

ATTORNEY: Based upon your experience with people, and particularly as a supervisor, from what you actually saw yourself, was it your belief that these things really were upsetting Nina.

RILEY: They seemed to be.

As the testimony of both Alexander, the EEOC compliance officer, and Riley, the appellant's supervisor, demonstrated, *no* investigation was conducted of the appellant's charges of repeated verbal racial epithets from 1981 when Risinger first undertook to report them until 1984, shortly before appellant left her position. Both Alexander and Riley conceded the inaction to eliminate the racially derogatory statements that other employees may have been directing toward Risinger. In light of the evidence, this court is left "with the definite and firm conviction that" the district court's factual conclusion that Risinger's "claims of discrimination were properly investigated" was clearly erroneous. *See Bose Corp.*, 466 U.S. at 499, 104 S.Ct. at

1959; *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511; *Sewell*, 863 F.2d at 466–67; *Connaughton*, 842 F.2d at 829. Contrary to the legal conclusion drawn by the district court, the failure of the defendant to initiate *any* appropriate action in response to repeated complaints for a period of some three years presented, at least, a *prima facie* claim of a racially hostile working environment. *See, e.g., Rabidue*, 805 F.2d at 621 (Plaintiff may "prevail in an action that asserts a charge of offensive work environment [racial] harassment ... by proving that the employer, through its agents or supervisory personnel, knew or should have known of the charged [racial] harassment and failed to implement prompt and appropriate corrective action."); *Yates v. Avco Corp.*, 819 F.2d 630, 634–35 (6th Cir.1987) ("[T]he standard applied to [discriminatory workplace harassment on the part of] coworkers ... states that an employer is liable only if it 'knew or should have known' and failed to take immediate and appropriate corrective action.") (quoting 29 C.F.R. § 1604.11(d)); *accord Yates*, 819 F.2d at 636 ("We also find that although [defendant] took remedial action once the plaintiffs registered complaints, its duty to remedy the problem, or at a minimum, inquire, was created earlier when the initial allegations of harassment were reported."); *cf. Paroline v. Unisys Corp.*, 879 F.2d 100, 107 (4th Cir.1989).

Because the record reflects that the district court's key factual conclusions were clearly erroneous, the district court erred in granting the defendant's Rule 41(b) motion for dismissal of Risinger's claim of a racially hostile working environment. Accordingly, the decision of the district court is REVERSED and REMANDED to further address the appellant's charged cause of action arising within a racially hostile working environment.[2]

In *Patterson v. McLean Credit Union*, 491 U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), the Supreme Court, in addressing the elements of actionable racial harassment in the workplace, has clarified a confusion within this circuit concerning the relationship between racially and sexually charged harassment arising within a hostile work environment initiated pursuant to Title VII and section 1983.

Initially, it should be noted that the required elements of *prima facie* proof necessary for a plaintiff to prove a cause of action charging a racially hostile work environment both under Title VII and 42 U.S.C. § 1983 are the same.

> One may ... establish a Title VII violation by showing a 'discriminatory and offensive work environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers....' *Vaughn v. Pool Offshore Co.*, 683 F.2d 922, 924 (5th Cir.1982) (quoting *Rogers v. E.E.O.C.*, 454 F.2d 234, 238 (5th Cir.1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972)). Successfully meeting these requirements would also establish a successful case under 42 U.S.C. §§ 1981 and 1983; when these statutes are used as parallel causes of action with Title VII, they require the same proof to show liability.

*Hamilton v. Rogers*, 791 F.2d 439, 442 (5th Cir.1986); *accord Nilsen v. City of Moss Point*, 701 F.2d 556, 559 n. 3 (5th Cir.1983) (en banc) ("This court has held that when § 1983 is used as a parallel remedy with Title VII in a discrimination suit, the elements of the substantive cause of action are the same under both statutes.") (quoting *Rivera v. City of Wichita Falls*, 665 F.2d 531, 534 n. 4 (5th Cir.1982)); *Merwine v. Board of Trustees for State Inst.*, 754

---

2. In light of this court's determination that the district court erred in concluding that Risinger had failed to establish a *prima facie* case of racially hostile work environment and *respondeat superior* liability, on remand the district court should reexamine its conclusion that the appellant was not constructively discharged, pursuant to the applicable case precedent. *See, e.g., Wheeler v. Southland Corp.*, 875 F.2d 1246, 1249

(6th Cir.1989) ("[A]n employee can establish a constructive discharge claim by showing ... that a reasonable employer would have foreseen that she would resign, given the [racial] harassment she faced."); *see also Yates v. Avco Corp.*, 819 F.2d 630, 636–37 (6th Cir.1987); *cf. Paroline v. Unisys Corp.*, 879 F.2d 100, 108–10 (4th Cir. 1989).

F.2d 631, 635 n. 3 (5th Cir.) (same), *cert. denied,* 474 U.S. 823, 106 S.Ct. 76, 88 L.Ed.2d 62 (1985); *see also Jett v. Dallas Indep. School Dist.,* 798 F.2d 748, 756 (1986), *reh'g denied,* 837 F.2d 1244 (5th Cir.1988), *aff'd in part, rev'd in part,* —— U.S. ——, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989); *Whiting v. Jackson State University,* 616 F.2d 116, 121 (5th Cir.1980); *Carrion v. Yeshiva University,* 535 F.2d 722, 729 (2nd Cir.1976); *compare Sewell v. Jefferson County Fiscal Court,* 863 F.2d 461, 466 (6th Cir.1988), *petition for cert. filed,* 57 U.S.L.W. 3843 (U.S. May 8, 1989) (No. 88–2037); *Daniels v. Board of Educ. of Ravenna School Dist.,* 805 F.2d 203, 207 (6th Cir.1986); *Grano v. Department of Dev. of Columbus,* 637 F.2d 1073, 1082 (6th Cir.1980).

The requisite elements of proof in an action anchored in a sexually hostile work environment initiated pursuant to Title VII or section 1983 were defined in this circuit's decision in *Rabidue v. Osceola Ref. Co.,* 805 F.2d 611, 619–20 (6th Cir.1986), *cert. denied,* 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987), the first decision post *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). *Rabidue* identified the five elements of *prima facie* proof placed upon a plaintiff as follows:

> [T]o prevail in a Title VII offensive work environment sexual harassment action, [the claimant] must assert and prove that: (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment in the form of ... verbal ... conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive work environment that affected seriously the psychological well-being of the plaintiff; and (5) the existence of respondeat superior liability.

*Rabidue v. Osceola Ref. Co.,* 805 F.2d at 619–20; *Highlander v. K.F.C. Nat'l Mgmt. Co.,* 805 F.2d 644, 649 (6th Cir.1986); *accord Yates v. Avco Corp.,* 819 F.2d 630, 633 (6th Cir.1987); *see also Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307, 309 n. 3 (5th Cir.1987); *Jones v. Flagship Int'l,* 793 F.2d 714, 719–20 (5th Cir.1986), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 952, 93 L.Ed.2d 1001 (1987); *Hall v. Gus Constr. Co.,* 842 F.2d 1010, 1012 (8th Cir. 1988); *Moylan v. Maries County,* 792 F.2d 746, 749 (8th Cir.1986); *Huddleston v. Roger Dean Chevrolet, Inc.,* 845 F.2d 900, 904 (11th Cir.1988); *Bell v. Crackin Good Bakers, Inc.,* 777 F.2d 1497, 1502–03 (11th Cir. 1985); *Henson v. City of Dundee,* 682 F.2d 897, 903–05 (11th Cir.1982); *compare Caroline v. Unisys Corp.,* 879 F.2d 100, 104–05 (4th Cir.1989); *Swentek v. USAIR, Inc.,* 830 F.2d 552, 557 (4th Cir.1987); *Downes v. Federal Aviation Admin.,* 775 F.2d 288, 293 (Fed.Cir.1985). The standard enunciated in *Rabidue* was derived from the pronouncements of the Equal Employment Opportunity Commission's administrative guidelines, as directed by the Supreme Court in *Vinson,* and from *Rogers v. Equal Employment Opportunity Comm'n,* 454 F.2d 234, 238 (5th Cir.1971), *cert. denied,* 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972), relating to a racially hostile work environment, and *Henson v. City of Dundee,* 682 F.2d 897 (11th Cir.1982), relating to a sexually hostile work environment, both referred to with approval by the Supreme Court in *Patterson,* 491 U.S. at ——, 109 S.Ct. at 2374 & n. 3, and *Vinson,* 477 U.S. at 65–67, 106 S.Ct. at 2405–06.[3]

---

**3.** In its opinion in *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court endorsed the administrative guidelines defining sexually based harassment, which had been promulgated by the Equal Employment Opportunity Commission (EEOC), as an appropriate standard for proving a *prima facie* sexually hostile working environment claim, specifically noting that the EEOC guidelines "appropriately drew from, *and* were fully consistent with, the existing caselaw"* pertaining to proving a racially hostile working environment. *Meritor Savings Bank v. Vinson,* 477 U.S. at 65–66, 106 S.Ct. at 2405 (emphasis added). The EEOC guidelines, to which the Court had referred to in *Vinson,* expressly indicated that "[t]he principles involved here continue to apply to *race,* color, religion or *national origin.*" 29 C.F.R. § 1604.11(a), at 193 n. 1 (July 1, 1988) (emphasis added).

In 1988, a decision of this court in *Davis v. Monsanto Chem. Co.*, 858 F.2d 345 (6th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 3166, 104 L.Ed.2d 1028 (1989), concluded that *different* elements of proof applied in a Title VII claim arising with a *racially* hostile work environment than in a case of *sexual* harassment within the workplace. The decision in *Davis*, decided in October, 1988, was a departure from the standard intended to be applicable to both racial and sexual harassment causes of action predicated upon a pervading hostile climate within the workplace generally, as directed by the EEOC guidelines, *Rogers*, and *Henson*, and as synthesized in *Rabidue*, decided approximately two years earlier in November, 1986.

In *Patterson v. McLean Credit Union*, 491 U.S. ——, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), a case addressing actionable racial harassment in the workplace, the Supreme Court reaffirmed its earlier pronouncement in *Vinson* that the elements and burden of proof placed upon a plaintiff in *both a racially and sexually charged harassment action* arising within a hostile work environment are identical. The Court observed that racial harassment in the workplace "is actionable under ... Title VII of the Civil Rights Act of 1964," noting that in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), it had "implicitly ... approved" the existence of a cause of action for racially based hostile working environment when it had affirmed the EEOC's regulatory guidelines defining sexually based harassment in the workplace.

Petitioner ... alleged that during her employment with respondent, she was subjected to various forms of racial harassment from her supervisor.

.... [S]uch conduct is actionable under ... Title VII of the Civil Rights Act of 1964 [which] ... makes it unlawful for an employer to 'discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment.' '[T]he [Equal Employment Opportunity Commission (EEOC)] has long recognized that harassment on the basis of race ... is an unlawful employment practice in violation of § 703 of Title VII of the Civil Rights Act.' *See* EEOC Compliance Manual § 615.7 (1982). While this Court has not yet had the opportunity to pass directly upon this interpretation of Title VII, the lower federal courts have uniformly upheld this view, and we implicitly have approved it in a recent decision concerning sexual harassment, *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 65–66, [, 106 S.Ct. 2399, 2404–05, 91 L.Ed.2d 49] (1986). As we said in that case, 'harassment [which is] sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment,' [*Vinson*, 477 U.S. at 67, 106 S.Ct. at 2406], is actionable under Title VII because it 'affects a "term, condition, or privilege" of employment,' *ibid.*

*Patterson*, 491 U.S. at ——, 109 S.Ct. at 2373–74 (quoting *Vinson*, 477 U.S. at 67, 106 S.Ct. at 2406). Additionally, the EEOC Compliance Manual, which the Supreme Court quoted extensively with approval in *Patterson*, 491 U.S. at ——, 109 S.Ct. at 2374, expressly provides that "the principles involved *with regard to sexual harassment* continue to apply to harassment on the basis of *race*, color, religion, or *national origin*." EEOC Compliance Manual § 615.7 (*Harassment on the Bases of Race, Religion, and National Origin*) (b) (*Applicable Principles and Standards*) (emphasis added). *See Patterson*, 491 U.S. at ——, 109 S.Ct. at 2374 (quoting with approval *Vinson*, 477 U.S. at 65–66, 106 S.Ct. at 2405–06); *cf. Price Waterhouse v. Hopkins*, 490 U.S. —— n. 9, 109 S.Ct. 1775, 1787 n. 9, 104 L.Ed.2d 268 (1989) (After observing that Title VII "on its face treats each of the enumerated categories [including race and sex] exactly the same," the Court concluded that the legislative history behind the passage of the statute was applicable both to race and to sex, and that the standards enunciated in the opinion "apply with equal force to discrimination based on race, religion, or national origin.") (Brennan, J., plurality opinion).

Accordingly, this case is REVERSED and REMANDED for a retrial not inconsistent with the pronouncement of this decision.