995 F.2d 1067
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Pauline Elizabeth NORTON, Plaintiff-Appellant,
v.
UNIVERSITY OF MICHIGAN, Institution of Higher Education
State University, Office of Undergraduate Admissions;
Michael Donahue, Associate Director, Undergraduate
Admissions Office; Clifford Sjogren, Director,
Undergraduate Admissions Office; Arlie Braman, Personnel
Service Center Representative for the Undergraduate
Admissions Office; Virginia Nordby, Director, Office of
Affirmative Action; Daniel A. Gamble, Member of the
University Grievance Review Committee, Manager of
Compensation and Staff Relations; Robert Holmes, Member of
the University Grievance Review Committee, Assistant
Vice-President for Academic Affairs; Jimmy Myers, Member of
the University Grievance Review Committee, Office of
Affirmative Action; Richard Lederer, Member of the
University Grievance Review Committee, of the Personnel
Service Center, Defendants-Appellees.
 No. 91-2336.
 United States Court of Appeals, Sixth Circuit.
 June 1, 1993.
 
 Before: MARTIN and BOGGS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 Pauline E. Norton appeals the grant of summary judgment in favor of her former employer, the University of Michigan, in this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. Norton alleges that she received a three-day disciplinary layoff and was eventually discharged because of sex and race harassment and in retaliation for filing a claim of sex harassment.
 
 
 2
 Pauline Norton is a white female. In December 1984, Norton began her employment with the University of Michigan as a part-time counselor in the Undergraduate Admissions Office. Her work consisted largely of preparing admissions publications. In the fall of 1986, Michael Donahue, Norton's boss and the Associate Director of Undergraduate Admissions, received some complaints from co-workers about Norton. According to the other workers, she was not answering her telephone and was generally difficult to reach.
 
 
 3
 On December 15, Donahue met with Norton to discuss the complaints about her job performance. He mentioned the perception that she was often unavailable at work. He also said that she failed to respond to requests to produce a publications calendar. Donahue formalized his concerns in a letter dated December 15, 1986. Norton acknowledged Donahue's concerns and explained that she had not been answering the phone because she had received obscene phone calls.
 
 
 4
 After the December meeting, Donahue and Norton scheduled weekly conferences to discuss office publications. By February, Donahue determined that Norton's job performance was deficient. In a memorandum dated February 5, 1987, Donahue directed Norton to seek an evaluation from the University Faculty Staff Assistance Program. Norton reacted angrily to this request and threatened Donahue with a suit for sexual harassment.
 
 
 5
 On February 8, Norton filed a claim of sex harassment with the Office of Affirmative Action at the University of Michigan. Norton's claim was based on several conversations between Donahue and her. In the first incident, Donahue offered to be Norton's "buffer" in the office when she first began her employment. She did not understand this comment, and Donahue never explained what he meant. Second, in January or February of 1985, Donahue suggested that he and Norton could go out for a drink at some point, but never actually took Norton out for a drink. Third, Norton claimed that Donahue offered to take her out to dinner when they were working late one Sunday. Norton declined his offer, and they never went out. Fourth, Donahue engaged in conversations about the computer that Norton construed as having a double meaning related to sexual conduct. Such language included "putting in the disk, turning on the computer, playing with the computer." Several investigators at the university looked into Norton's claims, but none of the investigators concluded that Norton's claims were substantiated. Norton also claims that several events constituting sex harassment occurred outside of the office setting, but she could not attribute this conduct specifically to anyone at the University of Michigan. Norton alleges that clothing in her apartment, especially undergarments, were ripped. Norton heard a squeaking bed above her apartment. A neighbor confronted her in a hostile, sexual manner. A couple across the street engaged in amorous activities in full view. Norton also claims that she found soiled clothing and knitting needles dipped in excrement in her apartment.
 
 
 6
 In September 1987, the Office of Undergraduate Admissions held an office-wide retreat, which all employees were to attend. Norton received a three-day disciplinary layoff for leaving the retreat early. Upon her return from the layoff, Norton failed to report to Donahue as he requested. On September 21, Norton was discharged for repeatedly failing to follow instructions regarding attendance at meetings and communication with fellow employees and her supervisor. After she was released from employment, Norton filed another charge for harassment with the Affirmative Action Office at the university. This office again found that her claim was without merit.
 
 
 7
 On December 7, Norton filed a charge of sex discrimination with the Equal Employment Opportunity Commission and the Michigan Department of Civil Rights. Norton claimed that she was discharged in retaliation for filing the sex harassment claim in February. This charge was dismissed with a finding of no discrimination.
 
 
 8
 On June 6, 1990, Norton filed a claim in the district court for discrimination based on race and sex in violation of Title VII. On April 8, 1991, the district court granted Norton's motion to amend her complaint to add six new statutory causes of action against the university: a claim of racial discrimination in violation of Title VI, 42 U.S.C. § 2000d; a claim of sex discrimination in violation of Title IX, 20 U.S.C. § 1681; an unfair labor practice claim under the National Labor Relations Act, 29 U.S.C. § 151; a claim under the Equal Pay Act, 29 U.S.C. § 206(d); a 42 U.S.C. § 1981 claim; and an action under the Elliott-Larsen Civil Rights Act, M.C.L.A. 37.2101 et seq. On May 2, 1991, the district court appointed counsel for Norton. After a disagreement with her appointed counsel, Norton filed a motion to dismiss counsel, which the district court granted on June 7. Norton has proceeded in pro per since that time. On July 3, the district court granted the university's motion to dismiss the amended complaint, thereby leaving only the original Title VII claim before the court. On October 15, the district court granted summary judgment to the university and dismissed Norton's Title VII claim. The district court denied Norton's motion for reconsideration. On November 14, Norton filed a notice of appeal.
 
 
 9
 Norton argues that the district court erroneously granted summary judgment to the defendants for four reasons. In her first and second arguments, Norton contends that there was sufficient evidence to support a finding that sexual harassment and retaliatory discharge occurred. The third argument is that the district court should have reconsidered the magistrate judge's factual findings in accordance with 28 U.S.C. § 636(b)(1)(B), instead of 28 U.S.C. § 636(b)(1)(A). Fourth, Norton asserts that the district court failed to consider evidence of continued harassment and pressure so that she would withdraw her suit. Specifically, she alleges that she was almost hit by automobiles on several occasions, but she does not discuss who was driving the vehicles.
 
 
 10
 Norton's claims are without merit. Summary judgment was proper in regard to the retaliatory discharge because her discharge was not connected to her claim of discrimination. To establish a prima facie case of retaliation, Norton must show (1) that she engaged in an activity protected by Title VII; (2) that the exercise of the protected activity was known to her employer; (3) that the employer subsequently took an employment action adverse to the employee; and (4) that a causal connection existed between the protected activity and the action by the employer. Canitia v. Yellow Freight System, Inc., 903 F.2d 1064, 1066 (6th Cir.1990), cert. denied, 111 S.Ct. 516 (1990). In this case, there is neither direct nor circumstantial evidence of a causal connection between Norton's filing of the sex harassment claim and termination of her employment by the defendants. This is not a case in which one could easily draw an inference of retaliatory discharge, such as when the employee was discharged soon after claiming harassment. Norton was fired more than seven months after filing her sex harassment claim. More importantly, her discharge occurred nine months after she was told that her job performance was deficient. The record indicates that Norton's work habits continued to be a problem until the date of her discharge. Therefore, the evidence demonstrates that the university fired Norton as a result of her poor performance at work rather than in retaliation for her filing a claim of sex harassment.
 
 
 11
 The grant of summary judgment was also proper on the question of racial harassment because Norton could not establish an actionable case of racial harassment. Norton must establish that she was a member of a protected class, that she was subjected to unwelcome harassment, that the harassment was based on race, and that the harassment created a hostile work environment that seriously affected her well-being. Risinger v. Ohio Bureau of Workers' Compensation, 883 F.2d 475, 484 (6th Cir.1989). Norton has failed to put forward any evidence of harassment based on race. Therefore, summary judgment on Norton's racial harassment claim was correct.
 
 
 12
 The district court also properly concluded that Norton's claims did not establish conduct that rose to the level of sex harassment. The elements of a Title VII sexual harassment claim based on an offensive work environment are (1) that the employee was a member of a protected class; (2) that the employee was subject to unwelcome sexual harassment; (3) that the harassment was based on sex; (4) the harassment effectively interfered with the employee's performance at work in an unreasonable way and created an offensive work environment; and (5) that respondeat superior liability existed. Rabidue v. Osceola Refining Co., 805 F.2d 611, 619-20 (6th Cir.1986). The record does not indicate that unwelcome sex harassment occurred. No reasonable person would be offended by the comments that Norton claimed constituted sex harassment. Although we believe that Norton has not established any of the other required elements of a sex harassment claim, we need not address these deficiencies because the absence of evidence on one element bars a claim altogether.
 
 
 13
 The judgment of the district court is affirmed.