Larry E. ARWOOD, Plaintiff,

v.

William S. COHEN, Secretary of the Department of Defense, Defendant.

No. 96–3134 Ml/B.

United States District Court,
W.D. Tennessee,
Western Division.

Jan. 7, 1998.

Larry E. Arwood, Memphis, TN, pro se.

Harriett M. Halmon, Veronica Coleman, U.S. Atty's Office, Memphis, TN, for Defendant.

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McCALLA, District Judge.

Plaintiff, Larry Arwood, brings this action alleging that he was subjected to a hostile and intimidating work environment based on his race and religion, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). This matter is before the Court on defendant's motion for summary judgment, filed November 25, 1997. For the reasons set forth below, defendant's motion is GRANTED.

### BACKGROUND

Viewing the facts in the light most favorable to the plaintiff, as the Court must do in considering a defendant's motion for summary judgment, the relevant facts are as follows:

Plaintiff was hired on a temporary basis on September 19, 1986 as a warehouse worker at the Memphis Defense Depot. Plaintiff received a succession of temporary appointments, and on November 10, 1991, plaintiff obtained a permanent part-time position. His work schedule remained part-time until November 5, 1995, when he received a full-time position.

On February 11, 1994, plaintiff received a five (5) day suspension from work for fighting and threatening bodily harm during a physical altercation that occurred on November 2, 1993 between plaintiff and his acting supervisor, Robert Taylor. Both parties were found to be at fault. On March 25, 1994, plaintiff filed an EEOC complaint alleging that he was subject to a hostile work environment based upon his race and religion. Plaintiff resigned on March 14, 1996 and received voluntary separation pay.

### DISCUSSION

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *id.* at 323, 106 S.Ct. 2548, and the nonmoving party is unable to point to genuine issues of material fact, summary judgment is appropriate. *Emmons v. McLaughlin,* 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden–Alimak, Inc.,* 799 F.2d 1128, 1133 (6th Cir.1986).

When confronted with a properly supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A genuine issue of material fact exists "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury

or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

### I. *The Standard of Proof in a Hostile Environment Claim*

Pursuant to Title VII, it is "an unlawful employment practice for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). In *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Supreme Court made clear that "the language of Title VII is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent 'to strike at the entire spectrum of disparate treatment of men and women' in employment." *Meritor,* 477 U.S. at 64, 106 S.Ct. 2399 (internal citations omitted).

A violation of Title VII occurs when the workplace is permeated with "discriminatory intimidation, ridicule, and insult" that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. *Id.* at 65, 106 S.Ct. 2399. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993).

A cause of action based on a hostile work environment has been recognized in Title VII cases alleging sex discrimination, *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), and discrimination based on race, *Risinger v. Ohio Bureau of Workers' Compensation,* 883 F.2d 475 (6th Cir.1989). "The elements and burden of proof placed upon a plaintiff in both a racially and sexually charged harassment action are identical." *Risinger,* 883 F.2d at 485.

In *Fleenor v. Hewitt Soap Co.,* 81 F.3d 48, 49 (6th Cir.1996), the Sixth Circuit stated that a plaintiff must prove the following elements in order to establish a hostile work environment claim in the sexual harassment context:

> 1) the employee is a member of protected class; 2) the employee was subject to unwelcome sexual harassment; 3) the harassment complained of was based upon sex; 4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment; and 5) the existence of respondeat superior liability.

*Fleenor,* 81 F.3d at 49. Accordingly, to support his hostile work environment claim, plaintiff must establish: 1) that he was a member of a protected class; 2) that he was harassed or discriminated against; 3) that the harassment complained of was based on his race and/or religion; 4) that the harassment unreasonably interfered with his work performance and created a hostile, intimidating work environment; and 5) the existence of respondeat superior. *See Risinger,* 883 F.2d at 485 (noting that burden of proof is the same in sexual harassment and race-based Title VII actions).

Accordingly, plaintiff must prove that the comments and actions that he alleges were not merely offensive, but were "severe and pervasive enough to create an objectively hostile or abusive work environment." *Harris,* 510 U.S. at 21, 114 S.Ct. 367. Whether the conduct violates Title VII is determined by looking at all of the circumstances underlying the claim, including:

> the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.* at 17, 114 S.Ct. 367. Therefore, the actions plaintiff complains of must be understood by a reasonable person as harassment and must be based on an impermissible criteria, such as plaintiff's race or religion.

### A. *Plaintiff's Claim for Discrimination Based on his Religion*

 Plaintiff submits over 930 pages of "notes" which set forth his various hostile environment claims. In spite of the volume of these notes, however, plaintiff offers no evidence that any action taken against him was based on his religion. In fact, plaintiff does not claim to be a member of any specific religion.[1] October 29, 1997 Deposition of Larry Arwood at 11 (hereinafter "Pl's Dep."). There is no reference to treatment based on his religion in any of his many pages of specific complaints. Plaintiff offers no evidence to suggest that anyone at the Defense Depot was even aware that he belonged to any particular religious group. Because a conclusory allegation of discrimination based on religion, with nothing more to support it, cannot survive a motion for summary judgment, defendant's motion for summary judgment as to plaintiff's claims of discrimination based on his religion is GRANTED.

### B. *Plaintiff's Claim for Discrimination Based on his Race*

 Throughout the voluminous "notes" that plaintiff has submitted to the Court, and in his deposition, plaintiff has stated that the entire black race and the local, state, and federal governments have an "agenda" against him to try and make him "fall". Pl's Dep. at 5–6. Plaintiff maintains that all of the difficulties in his life are the result of this "agenda" against him, including: the dissolution of his marriage, his acne, maintenance problems with his house, the loss of two jobs prior to his employment at the Defense Depot, etc. Plaintiff states that the "agenda" against him forced him to come back to Memphis, and that all of his problems, both mental and physical, stem from living in Memphis. Pl's Dep. at 10, 21, 29 and 30.

As discussed above, plaintiff has submitted nearly one thousand (1000) pages of documents in this matter. Much of it is difficult for the Court to decipher and relates to conduct or events that are not the subject of this suit (e.g., plaintiff's alleged inability to date women because the "agenda" has prevented him from advancing economically and acquiring a nicer car, plaintiff's problems with his toilet that is "falling through the floor", plaintiff's drinking problem which "causes his knees and lower back to hurt on occasion"). In support of his race discrimination claim, plaintiff offers the following specific allegations:

1. A black co-worker (Bolton), referring to a specific theater stated, "that is where the white people go." Pl's Dep. at 41.

2. Plaintiff did not get along well with a black co-worker (Cooper). Pl's Dep. at 42.

3. A black co-worker (McCoy) called plaintiff (who is white) a "nigger" and a "liar". She later apologized. Pl's Dep. at 44–45.

4. Plaintiff's white male supervisor (Howerton) wanted him to slander blacks and is "in on the agenda because he wants to see America fall or he wants to help weaken white males because he wants Mexicans ... to move up". Pl's Dep. at 56–57.

5. A black co-worker (Wimbly) pretended to be plaintiff's friend, but then got angry when plaintiff refused to drive him home. Pl's Dep. at 50.

---

**1.** The Court notes that in prior filings plaintiff has submitted to the Court, he referred to himself as Protestant. However, at his deposition plaintiff stated: "I—I do not claim to be a specific religion. I just claim to be a spiritual person or knowledgeable of the facts." As his deposition was taken after the filing of the prior documents, the Court construes this statement as plaintiff's current position.

6. A white co-worker, Dennis Custer, is "in on the agenda by the government and the black race." Pl's Dep. at 64.

7. A black co-worker (Fuller) made the statement, "don't you know you're supposed to dislike me because I'm black?" Pl's Dep. at 66.

8. Plaintiff was assaulted by a group of black males while working as a security guard subsequent to his employment with the Defense Depot. Pl's Dep. at 67.

9. Everyone that plaintiff came into contact with at the Depot was part of the "agenda" against him. Pl's Dep. at 68.

10. Blacks received instructions from society to persecute plaintiff. Pl's Dep. at 69.

11. Plaintiff's black supervisor, Robert Taylor, was sent from another warehouse by an "unseen force" to participate in the "agenda" against him. Pl's Dep. at 71.

█ In his numerous notes, plaintiff details disagreements with his co-workers and supervisors. He complains about equipment, smoking, work assignments, etc. However, plaintiff offers no evidence, other than his allegation that the entire black race has an "agenda" against him, that any of the things he complains about are based on his race. Plaintiff submits no evidence that he was treated unfairly in his performance appraisals or that he was wrongly disciplined. Nothing in the allegations submitted by plaintiff meets his burden of demonstrating that he was subjected to conduct "severe or pervasive enough to create an objectively hostile work environment" based on his race, *Harris*, 510 U.S. at 21, 114 S.Ct. 367, or that discriminatory conduct "unreasonably interfer[ed] with [his] work performance and creat[ed] an intimidating, hostile, or offensive working environment", *Fleenor*, 81 F.3d at 49. The "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee" does not affect the conditions of employment to a degree sufficient to violate Title VII. *Meritor*, 477 U.S. at 66, 106 S.Ct. 2399. Accordingly, defendant's motion as to plaintiff's race discrimination claim is GRANTED.

### CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is GRANTED.

IT IS ORDERED