**Richard E. HOWARD, Plaintiff,**

v.

**NATIONAL CASH REGISTER CO., Defendant.**

**Civ. A. No. 4538.**

United States District Court, S. D. Ohio, W. D.

Jan. 6, 1975.

William J. Davis, Columbus, Ohio, for plaintiff.

Dean Denlinger, Richard A. DuRose. Dayton, Ohio, for defendant.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

RUBIN, District Judge.

This matter is before the Court following trial, presentation of evidence and testimony, and the submission of posttrial memoranda. Plaintiff seeks recovery for asserted violations by defendant of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and violations of the Civil Rights Act of 1866, 42 U.S. C. § 1981. In accordance with Rule 52 of the Federal Rules of Civil Procedure, the Court does hereby submit its Findings of Fact, Opinion and Conclusions of Law.

## I

### FINDINGS OF FACT

1. Plaintiff has been an employee of defendant, The National Cash Register Company, for approximately eight years. While an employee, he was encouraged by supervisory employees of defendant to apply for a plant guard position. He did so apply, received 120 hours of instruction, and was appointed to the position of plant guard, which position he still retains although at the time of trial he was on a medical leave of absence. When plaintiff was appointed as a plant guard in 1968, he was the first black person to receive such an appointment.

2. During the time of his employment, plaintiff has received the same pay, worked the same shifts and received the same treatment from supervision as all other members of the plant guard staff. No evidence has been presented of any harassment, discriminatory treatment, or violation of his civil rights by members of supervision or management.

3. In 1973 plaintiff received $11,810.-00 annual salary, approximately $250.00 more than the average of all plant guards. In the calendar year ending December, 1972, plaintiff received $182.-00 more than the average salary paid to all guards for that year. In the calendar year ending December, 1971, plaintiff received $338.00 less than the average salary paid to plant guards. In the year ending December, 1970, plaintiff received $300.00 more than that paid to the average plant guard (Defendant's Exhibit K). No evidence has been presented that plaintiff was denied overtime hours. For the above four years plaintiff received a total of $392.-00 more than the average salary paid to all plant guards.

4. At some time in early 1971 plaintiff complained to management concerning his treatment by fellow guards. He submitted examples of such treatment (Plaintiff's Exhibit 3) and an investigation was made regarding the charges. An examination of the 32 numbered complaints by plaintiff indicate only 12 having any relationship to his color or race. Such complaints involved references to black people, jokes about black people, and references to plaintiff's status as the only black guard on the force.

The preponderance of evidence indicates that the totality of the remarks, while offensive to a sensitive person, constitute little more than "locker room conversation and humor." No evidence has been presented that management failed to investigate these complaints or proceeded in other than a diligent manner.

5. Disciplinary action against fellow guard, John Carr, was taken when he used the word, "nigger," in the presence of plaintiff, although not directing such term to him. For such behavior Mr. Carr was suspended for three days. No evidence was presented either by plaintiff or defendant of any other incident.

6. In April, 1971 plaintiff, while making his rounds, at approximately 2:00 a. m. was confronted with a rope from an overhead pipe and knotted in what is known as a "Hangman's Noose." No evidence was presented as to the person or persons responsible for this; no evidence was presented as to the significance of the rope; and no evidence was presented by plaintiff that defendant failed to make a diligent inquiry to determine the cause of the incident.

7. Based upon plaintiff's numerous complaints, supervisory management transferred him from the night shift to the day shift, held frequent meetings with defendant and with the head of his department, explained the company policy to his co-workers that harassment would be disciplined and discrimination would not be condoned. Management made investigations of plaintiff's complaints and terminated such investigations when met with denials by those charged.

## II

## OPINION

There is enjoined upon employers by 42 U.S.C. § 2000e–2 an obligation not to (1) "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin; or (2) to limit . . . his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin."

42 U.S.C. § 1981 gives all persons . . . "the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and (such persons) shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

■■■ Treatment other than the foregoing has come to be regarded as "discrimination." Baker v. California Land Title Company, 349 F.Supp. 235, 238 (C.D.Cal.1972). Whether or not the defendant has engaged in acts of discrimination is essentially a question of fact to be resolved on a case by case basis. United States by Clark v. H. K. Porter Co., 296 F.Supp. 40 (N.D.Ala. 1968). It is well settled that a plaintiff must prove the existence of discrimination by a preponderance of the evidence. Frockt v. Olin Corporation, 344 F. Supp. 369 (S.D.Ind.1972) Discriminatory treatment is proscribed and an employer may be enjoined, required to make back pay awards, or to pay costs and attorney fees in a situation where he has violated these proscriptions, 42 U.S.C. § 2000e–5(g) and (k). There has been no probative evidence of any such conduct by defendant in this case.

There has been evidence that plaintiff was subjected to treatment by fellow employees that might be offensive to one of sensitive feelings and might be ignored by others. It is a fact of life that social, ethnic, religious and racial distinctions are frequently drawn. There are Irish who dislike English; English who dislike French; French who despise Germans; Germans who hate Poles; and Poles who loathe Russians. For almost 100 years as waves of immigration have settled this country, there has been a succession of jokes regarding immigrants and classical comic characters poking fun at national groups. "Pat and Mike" jokes were as derogatory of Irish 100 years ago as "Polack" jokes are today. Stupid German comedians

were long a staple of vaudeville, and the sly, grasping, money-hungry Jew has been a classic figure of historical literature. To this number was added the ignorant, lazy, shiftless, caricature of a Black, as portrayed by Stephan Fetchit, Amos and Andy, and Eddie "Rochester" Anderson. That these portrayals were degrading, humiliating, and offensive to the ethnic groups they purported to represent has only recently been recognized. The damage, however, to persons of sensitivity was nonetheless deep, nonetheless real.

The language of the factory and the language of the street have long included words such as "Greaser", "Dago", and "Spick", and "Kike" and "Chink" as well as "Nigger". In the past three years we have even adopted as a part of our folk lore a character who is prejudiced and biased against all persons other than of his own neighborhood, religion and nationality. We refer to such people now as "Archie Bunkers." The Archie Bunkers of this world, within limitations, still may assert their biased view. We have not yet reached the point where we have taken from individuals the right to be prejudiced, so long as such prejudice did not evidence itself in discrimination. This Court will secure plaintiff against discrimination; no court can secure him against prejudice. The defendant in this case is charged by law with avoiding all discrimination; the defendant is not charged by law with discharging all Archie Bunkers in its employ. Absent a showing of something other than disrespect and prejudice by his fellow workers, plaintiff cannot bring himself within the terms of either 42 U.S.C. § 1981 or 42 U.S.C. § 2000e-2 et seq. The conclusion of the court in Fekete v. United States Steel Corporation, 353 F.Supp. 1177 (W.D.Pa.1973), is relevant here:

Even if this harassment has been motivated by plaintiff's national origin, which we find it was not, we do not think United States Steel can be held accountable for the unauthorized acts of its workers in this case.

We are not confronted with a situation in which an individual was subjected to a concerted pattern of harassment by workers which the company knew about and did not attempt to stop. In the case now before us, plaintiff was the object of a few isolated instances of harassment over a 5-year period, about which United States Steel's administrative and supervisory personnel did not always know but which they took steps to prevent and correct when they were informed.

Fekete v. United States Steel Corporation, *supra* at 1186; See also: Ostapowicz v. Johnson Bronze Company, 369 F.Supp. 522, 537 (W.D.Pa.1973). We note without comment the following observation: "Against a large part of the frictions and irritations and clashing of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law ever could be." Magruder, Mental and Emotional Disturbance in the Law of Torts, 49 Harvard Law Review 1033.

## CONCLUSIONS OF LAW

### A.

The jurisdiction of this Court has been properly invoked pursuant to 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981.

### B.

Whether or not the defendant has engaged in acts of discrimination is essentially a question of fact to be resolved on a case by case basis. United States by Clark v. H. K. Porter Co., 296 F. Supp. 369 (S.D.Ind.1972).

### C.

A plaintiff must prove the existence of discrimination by a preponderance of the evidence. Frockt v. Olin Corporation, 344 F.Supp. 369 (S.D.Ind.1972).

### D.

In accordance with the foregoing Findings of Fact this Court concludes that the defendant in this case has not

engaged in discriminatory practices toward plaintiff, has not discriminated against plaintiff on the basis of race or color, and has not discriminated against plaintiff in retaliation for plaintiff's filing of charges with the Equal Employment Opportunity Commission. Therefore, it is the holding of this Court that defendant did not violate 42 U.S.C. § 2000e et seq., or 42 U.S.C. § 1981, on those grounds.

### E.

In accordance with the foregoing Findings of Fact this Court concludes that the defendant has not participated in or condoned any practices or policies of discrimination against plaintiff. Therefore, it is the further holding of this Court that defendant did not violate 42 U.S.C. § 2000e et seq., or 42 U. S.C. § 1981 on those grounds.

### F.

Judgment will be, and hereby is, entered in favor of the defendant. Each party to pay its own costs.

Let judgment enter in accordance with the foregoing.