Jesse B. DAVIS and Richard Lorence Harris, Plaintiffs–Appellants,

v.

MONSANTO CHEMICAL COMPANY, Defendant–Appellee,

Teamsters Local 299; et al., Defendants.

No. 87–1505.

United States Court of Appeals, Sixth Circuit.

Argued Feb. 11, 1988.

Decided Oct. 4, 1988.

Rehearing and Rehearing En Banc Denied Dec. 6, 1988.

J. Michael Hill, argued, Bret A. Schnitzer, Hill & Schnitzer, P.C., Allen Park, Mich., Richard A. Eagal, for plaintiffs-appellants.

John F. Burns, Suanne Tiberio Trimmer, Mary K. Kator, argued, Clark, Klein & Beaumont, Detroit, Mich., for defendant-appellee.

Before MARTIN, JONES, and NORRIS, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Jesse B. Davis and Richard L. Harris appeal the district court's granting of summary judgment in favor of the Monsanto Chemical Company in this action alleging

racial harassment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and Michigan's Elliott–Larsen Civil Rights Act, Mich. Comp. Laws § 37.1201 *et seq.*

During their employment with Monsanto, both Davis and Harris, black males, had disciplinary problems, largely stemming from unauthorized absences. As both men approached the termination phase of Monsanto's disciplinary process, they filed separate charges of racial discrimination with the Equal Employment Opportunity Commission. After receiving right-to-sue letters, Harris and Davis brought separate actions against Monsanto, a Monsanto supervisor named Michael Newmarker, and Teamster's Local 299. Their complaints were consolidated.

Davis and Harris essentially have two claims. First, they contend that they were subjected to disparate treatment because of their race. Second, they allege that they were subjected to a racially hostile work environment that is actionable under Title VII.

The evidence to support these claims is not substantial. Davis and Harris allege that racial slurs were used at Monsanto, but only once was a racial epithet directed at either of them by a white co-worker or used in their presence. Davis and Harris also allege that derogatory racial graffiti was written on bathroom walls. The only time this problem was reported to a supervisor, however, the graffiti was promptly painted over. Davis also alleged that a safety poster, depicting the predicament of an inept worker, was shaded to represent a black man and labeled with Davis' name. But Davis never reported the incident, and the poster was taken down shortly thereafter. When Davis did report that someone altered his time card and spat on it, Davis' supervisor promptly posted a notice that such conduct would not be tolerated, and the conduct was not repeated. Both Davis and Harris allege that their supervisor, Newmarker, harassed them, but it is not clear that the comments they cite as evidence of his racist behavior were racially motivated.

Davis and Harris also allege that blacks were not permitted to eat with whites in the lunchroom. This situation was never reported to a supervisor, however, and two other black employees denied that blacks ate or were required to eat at a designated table. Davis and Harris offer no evidence to support their claims of car tampering, disparate disciplinary treatment, and inferior job training. They also charge that blacks and women were forced to perform unnecessary tasks, but this allegation is not substantiated and the problem was never reported.

The district court granted Monsanto's motion for summary judgment. The court concluded that the evidence in the record failed to satisfy the legal standards for maintaining a racial harassment claim under Title VII. The court also found no evidence to support Davis and Harris' disparate treatment claims. We agree with these conclusions.

■ In order to maintain a disparate treatment claim, Davis and Harris must produce evidence that, because of their race, they were treated less favorably than similarly-situated white employees. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). Davis and Harris raise three claims of disparate treatment: first, that Monsanto failed to train new black employees as well as white employees were trained; second, that white employees were disciplined less harshly for absenteeism than blacks; and, third, that rules regarding sick leaves were not evenly applied.

There is no evidence in the record to support these allegations. A fellow black employee testified that whites were not trained differently than blacks, and another black employee testified that Davis received adequate training. Davis and Harris' statements to the contrary are merely conclusory allegations, and, therefore, insufficient to create a genuine issue of fact. The only evidence regarding a white employee with a poor absenteeism record establishes that he was given the same discipline as that given to Davis and Harris.

Finally, Davis and Harris have cited no instance where Monsanto's disability leave verification rules were relaxed for a white employee. Therefore, the district court properly dismissed their disparate treatment claims.

■ We also believe that the district court's disposition of the hostile work environment claim was proper, but we reach the same result by following a different analytical route.

The first case to recognize a cause of action based upon a discriminatory work environment was *Rogers v. EEOC*, 454 F.2d 234 (5th Cir.1971), *cert. denied*, 406 U.S. 957, 92 S.Ct. 2058, 32 L.Ed.2d 343 (1972). The *Rogers* court held that an employee of Spanish origin could establish a Title VII violation by demonstrating that her employer created "a working environment heavily charged with ethnic or racial dicrimination." *Id.* at 238. Subsequently, several courts adopted this position, finding Title VII violations where an employer created or condoned a substantially discriminatory work environment, regardless of whether the complaining employee lost any tangible job benefits as a result of the discrimination. *See, e.g., Johnson v. Bunny Bread Co.*, 646 F.2d 1250 (8th Cir.1981); *DeGrace v. Rumsfeld*, 614 F.2d 796 (1st Cir.1980); *Gray v. Greyhound Lines, East*, 545 F.2d 169 (D.C.Cir.1976). This court first endorsed this development in *Erebia v. Chrysler Plastics Products Corp.*, 772 F.2d 1250 (6th Cir.1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986).

In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), the Court affirmed the principle embodied in this "substantial body of judicial decisions." *Id.* at 65, 106 S.Ct. at 2405, 91 L.Ed.2d at 59. In this case, the Court held that, "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of (the victim's) employment and create an abusive working environment.'" *Id.* at 67, 106 S.Ct. at 2406, 91 L.Ed.2d at 60 (*quoting Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir.1982)). The Supreme Court, however, declined to promulgate a definitive rule on when employers would be liable for such an environment. Rather, the Court recommended that subsequent courts "look to agency principles for guidance in this area." *Meritor Savings Bank v. Vinson, supra*, 477 U.S. at 72, 106 S.Ct. at 2408, 91 L.Ed.2d at 63.

In its discussion of Davis and Harris' hostile work environment claim, the district court quoted at length from this circuit's first post–*Vinson* opinion, *Rabidue v. Osceola Refining Co.*, 805 F.2d 611 (6th Cir. 1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987). The district court also frequently cited this case as support for its conclusions. We believe, though, that this reliance was misplaced because *Rabidue* does not apply to racially hostile work environment claims.

In *Rabidue v. Osceola Refining Co., supra*, the plaintiff alleged that she was the victim of a sexually discriminatory work environment. In assessing this claim, this court articulated a multi-factored test. Three of the five elements, though, referred specifically to "sex" or "sexual" harassment. *Id.* at 619. This court also prefaced its standard by stating that it applies to "a Title VII offensive work environment *sexual* harassment action." *Id.* (emphasis added). Finally, after citing cases which supported its test, this court in *Rabidue* suggested that its standard be compared with the standard in *Erebia v. Chrysler Plastics Products Corp., supra*, a case involving a racially hostile work environment claim. *Erebia* remains the controlling law for racially hostile work environment claims in this circuit.[1]

---

1. Some circuits apply the same legal standard for both types of hostile work environment claims, race and sex. *See, e.g., Henson v. City of Dundee*, 682 F.2d 897 (11th Cir.1982); *Walker v. Ford Motor Co.*, 684 F.2d 1355 (11th Cir.1982). We believe that the standards need not necessarily be identical. In another area of civil rights law, the Supreme Court has applied a different, intermediate level of scrutiny for classifications based upon gender, rather than the strict scrutiny used in reviewing classifications based on race, even though these two different standards emanate from the same constitutional provision. *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451,

Although the posture of the *Erebia* case was different from the posture of the case here,[2] this court in *Erebia* identified two requisite elements for a racially hostile work environment claim: "repeated slurs and management's tolerance and condonation of the situation." *Id.* We now take this opportunity to elaborate on the racially hostile work environment standard set forth for this circuit in *Erebia.*

■ In order to satisfy the first requirement, "repeated slurs," the plaintiff must show that the alleged racial harassment constituted an unreasonably abusive or offensive work-related environment or adversely affected the reasonable employee's ability to perform the tasks required by the employer. In establishing the requisite adverse effect on work performance, however, the plaintiff need not prove that his or her tangible productivity has declined as a result of the harassment. The employee need only show that the harassment made it more difficult to do the job.

■ In more fully explaining what this court intended by the use of the phrase "repeated slurs," we have deliberately avoided using a distinction drawn by other courts. In *Gilbert v. City of Little Rock,* 722 F.2d 1390 (8th Cir.1983), *cert. denied,* 466 U.S. 972, 104 S.Ct. 2347, 80 L.Ed.2d 820 (1984), the court stated that "[m]ore than a few isolated incidents of harassment must have occurred to establish a violation of Title VII." *Id.* at 1394, *citing Johnson v. Bunny Bread Co.,* 646 F.2d 1250, 1257 (8th Cir.1981). The *Gilbert* court suggested that the plaintiff must prove that the alleged conduct established a "pattern of harassment." *Gilbert v. City of Little Rock,* 722 F.2d at 1394. Drawing a distinction between "isolated incidents" and a "pattern of harassment" does not advance the analysis; the plaintiff need not prove

that the instances of alleged harassment were related in either time or type. Rather, all that the victim of racial harassment need show is that the alleged conduct constituted an unreasonably abusive or offensive work-related environment or adversely affected the reasonable employee's ability to do his or her job.

If the plaintiff can prove that the racially motivated conduct constituted such an environment, he or she must then show that the employer "tolerated or condoned the situation." In order to hold the employer liable for the conduct of the victim's co-workers, the plaintiff must establish that the employer knew or should have known of the alleged conduct and failed to take prompt remedial action. "[A]n employer who has taken reasonable steps under the circumstances to correct and/or prevent racial harassment by its nonsupervisory personnel has not violated Title VII." *DeGrace v. Rumsfeld,* 614 F.2d 796, 805 (1st Cir.1980).

Applying this two-part standard to the facts of this case, we conclude that the district court was correct in granting Monsanto's summary judgment motion. While the district court's findings may not be adequate with respect to whether the alleged harassment was sufficient to constitute a racially hostile environment, the evidence in the record clearly shows that Monsanto did not tolerate the alleged harassment. Davis and Harris cite several instances of alleged racial harassment. With respect to each incident, however, Davis and Harris failed to offer any evidence that Monsanto condoned the conduct.

Rather, the record clearly shows that, when informed of a potential problem, Monsanto took quick and appropriate measures to remedy the situation. For example, when a Monsanto supervisor was told

---

50 L.Ed.2d 397 (1976). Title VII, much like the equal protection clause, merely expresses a general prohibition, and courts are necessarily required to supply specific legal standards to enforce the underlying congressional mandate. Therefore, the application of slightly different standards in different types of hostile work environment claims is entirely consistent with established civil rights jurisprudence.

2. In *Erebia,* this court was reviewing whether the jury verdict in favor of the plaintiff was supported by substantial evidence. Here we are asked to decide whether it was proper to grant summary judgment in favor of the defendant, which requires a somewhat different standard of review.

about racially derogatory graffiti in the bathroom, the graffiti was painted over the next day. Similarly, when Davis reported the problem with his time card, a Monsanto supervisor promptly posted a notice stating that such conduct was unacceptable, and the incident did not reoccur.

■ With respect to the remaining instances of alleged harassment, those which Davis and Harris admit were not reported to Monsanto, the record indicates that Monsanto did not know and could not have known of the problem. For example, Davis and Harris complain that blacks were forced to eat at a separate table in the lunchroom. They admit, though, that this situation was never reported to a supervisor. Moreover, because two other black employees denied that blacks ate or were required to eat at a designated table, Monsanto could not have known of the possible problem. Therefore, because Monsanto cannot be charged with actual or constructive knowledge of this alleged lunch room "freezeout," it cannot be held liable for tolerating this alleged harassment.

In its discussion of this instance of alleged harassment, however, the district court may have misunderstood the true impact of Title VII. Citing *Howard v. National Cash Register Co.,* 388 F.Supp. 603 (S.D. Ohio 1975), the district court stated that, "the elimination of 'Archie Bunker' types from the factory environment carries Title VII too far." In *Howard,* the court explained that "Archie Bunker" is "a character who is prejudiced and biased against all persons other than of his own neighborhood, religion and nationality." *Id.* at 606. The *Howard* opinion stated that such people, "within limitations, still may assert their biased view." *Id.* By emphasizing the point that an employer "is not charged by law with discharging all Archie Bunkers in its employ," *Id.,* the district court here may erroneously be encouraging the perpetuation of the status quo.

Unfortunately, this confusion may be the product of a statement included in this court's opinion in *Rabidue v. Osceola Refining Co., supra.* In *Rabidue,* this court quoted with approval a passage from the district court's opinion. This court stated that " 'Title VII [was] not designed to bring about a magical transformation in the social mores of American workers.' " *Id.,* 805 F.2d at 621 (*quoting Rabidue v. Osceola Refining Co.,* 584 F.Supp. 419, 430 (E.D.Mich.1984)).

■ In reading this passage, however, one should place emphasis on the word "magical," not the word "transformation." Title VII was not intended to eliminate immediately all private prejudice and biases. That law, however, did alter the dynamics of the workplace because it operates to prevent bigots from harassing their co-workers. As the Supreme Court instructed, "[p]rivate biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect." *Palmore v. Sidoti,* 466 U.S. 429, 433, 104 S.Ct. 1879, 1882, 80 L.Ed.2d 421 (1984). Title VII does not impose an unreasonable or potentially unconstitutional burden on employers. "It may not always be within an employer's power to guarantee an environment free from all bigotry. He cannot change the personal beliefs of his employees; he can let it be known, however, that racial harassment will not be tolerated, and he can take all reasonable measures to enforce this policy." *DeGrace v. Rumsfeld, supra,* 614 F.2d at 805. In essence, while Title VII does not require an employer to fire all "Archie Bunkers" in its employ, the law does require that an employer take prompt action to prevent such bigots from expressing their opinions in a way that abuses or offends their co-workers. By informing people that the expression of racist or sexist attitudes in public is unacceptable, people may eventually learn that such views are undesirable in private, as well. Thus, Title VII may advance the goal of eliminating prejudices and biases in our society.

For the foregoing reasons, the district court's decision to grant summary judgment in favor of the Monsanto Chemical Company is hereby affirmed.

ALAN E. NORRIS, Circuit Judge, concurring in part and dissenting in part.

To the extent that the majority has framed the issue in this appeal as hinging upon the district court's reliance upon this

court's opinion in *Rabidue v. Osceola Refining Co.*, 805 F.2d 611 (6th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1983, 95 L.Ed.2d 823 (1987), and promulgates a standard for assessing Title VII claims for racial harassment in the work place which is inconsistent with the standard promulgated by the Supreme Court in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), I dissent. I do, however, concur in the result arrived at by the majority.

Apparently, the majority harbors a distaste for this court's opinion in *Rabidue*, a case involving sexual harassment in the work place, since pains are taken to scold the district court for looking to that opinion for guidance. But, in its fervor to distance itself from *Rabidue*, the majority would leave this circuit with different standards for measuring Title VII claims based on hostile work environments, depending upon whether they are predicated on race discrimination or sex discrimination. It is because I believe that result is at odds with the Supreme Court's opinion in *Vinson*, that I dissent.

The majority stakes its case on this court's opinion in *Erebia v. Chrysler Plastics Prod. Corp.*, 772 F.2d 1250 (6th Cir. 1985), *cert. denied*, 475 U.S. 1015, 106 S.Ct. 1197, 89 L.Ed.2d 311 (1986), an opinion which predated the Supreme Court's holding in *Vinson*. In promulgating the "multi-factor test" referred to by the majority, *Rabidue* relied upon *Vinson*, and cited *Erebia* as supporting a proposition sufficiently analogous to lend support. I cannot agree with the majority's assertion that "*Erebia* remains the controlling law for racially hostile work environment claims in this circuit," since the majority in that case was unable to anticipate *Vinson* with complete accuracy, and, understandably, the opinion is to some extent inconsistent with *Vinson*.

*Vinson*, when read together with the cases upon which it relies, instructs us that, in order to state a claim under Title VII for either race or sexual harassment in the work place, the conduct complained of must be sufficiently pervasive to alter the conditions of employment and create an abusive working environment, and it must

be sufficiently severe and persistent to affect seriously the psychological well-being of employees. *Vinson*, 477 U.S. at 65–67, 106 S.Ct. at 2405.

In *Rabidue*, this court required that "the charged sexual harassment [have] the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff." 805 F.2d at 619. Since this standard is consistent with *Vinson*, and in that opinion the Supreme Court accorded indistinguishable treatment to Title VII claims for race and sexual harassment in the work place, I am unable to agree with the majority that the district court was culpable of misplaced reliance in looking to *Rabidue* for guidance.

Because the district court was warranted in its conclusion that plaintiffs simply did not introduce evidence adequate to establish conduct sufficiently pervasive to alter their conditions of employment and create an abusive working environment, and of a sufficiently severe and persistent nature to affect seriously their psychological well-being, I would affirm the court's disposition of the hostile work environment claim on that basis, as well as upon the plaintiffs' failure to satisfy the appropriate standard of proof for *respondeat superior* liability.