1 F.3d 1241
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Linda G. LONG, Plaintiff-Appellant,
v.
Marvin T. RUNYON, Director, John B. Waters, Director,
William H. Kennoy, Director, in their official
capacities, and Tennessee Valley
Authority, Defendants-Appellees.
 No. 92-6078.
 United States Court of Appeals, Sixth Circuit.
 July 12, 1993.
 
 Before KENNEDY and MARTIN, Circuit Judges, and FORESTER, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff Linda G. Long, a black female, was formerly employed by the Tennessee Valley Authority ("TVA"). She sued the TVA and Marvin T. Runyon, John B. Waters and William H. Kennoy, in their official capacities as directors of the TVA, for alleged violations of Title VII related to corrective action the TVA took to remedy its prior discrimination against Long. The District Court granted summary judgment for defendants because plaintiff failed to establish a prima facie case of discrimination. We affirm.
 
 I.
 
 2
 Long began working at the TVA as an hourly painter at the Watts Bar Nuclear Plant ("Watts Bar") in June 1976. In October 1985, she applied for and was denied a job as a salaried painter at Watts Bar. On November 14, 1985, Long filed an internal complaint with the TVA claiming that her failure to be selected for the job was due to racial and sexual discrimination. On August 31, 1988, nearly three years later, the TVA Equal Employment Opportunity Office issued an opinion finding that Long was discriminated against on the basis of race when she was passed over for the annual painter position. To remedy this discrimination, the manager at Watts Bar was ordered to take the following, inter alia, corrective action:
 
 
 3
 1. Offer [Long] an annual position as painter at Watts Bar Nuclear Plant retroactive to October 16, 1985, and advise her of the effect on her employment status of any subsequent RIFs. [Long] shall have 15 days from the date she receives the RIF information to accept or reject the offer.
 
 
 4
 2. If Long accepts the offer, arrange for her to receive all applicable benefits, including the difference in overtime earned by [Long] and the average overtime earned by the selectees, and interest on the amount, less ordinary tax deductions....
 
 
 5
 The opinion also outlined Long's right to appeal the decision to the Equal Employment Opportunity Commission within 20 calendar days of receipt of the decision, or to file a civil action in United States District Court within 30 calendar days. Long did neither.
 
 
 6
 In a letter dated September 20, 1988, Robert A. Pedde, Site Director of Watts Barr, offered Long an annual position as a painter at Watts Bar retroactive to October 16, 1985. In the same letter, Pedde informed Long that due to a reduction in force ("RIF") in her new classification, she would be terminated from the position effective September 29, 1988.
 
 
 7
 Following her termination, Long unsuccessfully filed another administrative complaint on December 29, 1988, claiming that the decision to apply the RIF to her was racially motivated and in retaliation for her earlier complaint. Long appealed to the Merit Systems Protection Board ("MSPB"), which found that the TVA had lawfully invoked and applied the Federal RIF regulations to Long's annual position and determined that she had failed to establish any racial discrimination or claim for reprisal.
 
 
 8
 Plaintiff then filed this Title VII action on November 27, 1991, alleging that the TVA had discriminated against her on the basis of race, sex, and retaliation. The District Court dismissed Long's claim for sex discrimination as she failed to allege it in the administrative process. The court then granted defendants' motion for summary judgment. Plaintiff timely appealed.
 
 II.
 
 9
 We review the lower court's decision to grant summary judgment on a de novo basis, making all reasonable inferences in favor of the non-moving party. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). There is no genuine issue of material fact where the "non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Id. at 323.
 
 III.
 
 10
 In Title VII actions, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by the defendant. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). A plaintiff carries the burden by showing that:
 
 
 11
 (1) she was a member of a protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by a person outside the class.
 
 
 12
 Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir.1992). The fourth element may also be satisfied by showing that a comparable non-protected person was treated more favorably than the plaintiff. Id. at 582-83 (citing Davis v. Monsanto Chemical Co., 858 F.2d 345 (6th Cir.1988), cert. denied, 490 U.S. 1110 (1989); Long v. Ford Motor Co., 496 F.2d 500 (6th Cir.1974)). Alternatively, a Title VII plaintiff can establish a prima facie case of discrimination by presenting direct evidence of intentional discrimination by the employer. Terbovitz v. Fiscal Court, 825 F.2d 111, 114-15 (6th Cir.1987) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1985); Blalock v. Metals Trades, Inc., 775 F.2d 703, 707 (6th Cir.1985)). Long cannot carry her initial burden under either mechanism.
 
 
 13
 A. No Direct Evidence of Intentional Discrimination
 
 
 14
 Plaintiff contends that she has presented a prima facie case of racial discrimination and retaliation because defendants implemented the corrective action to remedy the prior racial discrimination against plaintiff by offering plaintiff a job that they knew would be eliminated by the RIF. In her initial complaint, plaintiff requested the annual painter position that she was ultimately awarded in 1988.[1] She did not request a more favorable placement on the retention register or a higher seniority standing than she would have had had she been hired in 1985, or had "RIF-proof" status. Long cannot now request greater relief or different relief than she requested in the initial administrative process, from which she did not appeal. Plaintiff is limited to appealing the decision to apply the RIF to her annual position. It is this decision that plaintiff must establish was motivated by racial animus or for purposes of retaliation.
 
 
 15
 The record shows that the responsible TVA officials were unaware of Long or her situation when deciding which classifications and how many people within each classification would be affected by the RIF. The RIF was implemented according to the Office of Personnel Management ("OPM") guidelines, which tend to have a "last hired, first fired" effect on veterans, the handicapped, minorities and women. The OPM has stated that despite this tendency, "agencies are not excused from RIF laws and regulations when they make such considerations." The District Court correctly held that the use of RIF guidelines by the TVA is not evidence of discrimination.
 
 
 16
 Plaintiff also argues that there is evidence of discrimination in the fact that defendants did not follow their affirmative action plan when deciding who would be affected by the RIF or give her preferential treatment in the RIF procedure. In Liao v. Tennessee Valley Auth., 867 F.2d 1366, 1369 (11th Cir.1989), cert. denied, 494 U.S. 1078 (1990), the Eleventh Circuit found that because the TVA's affirmative action plan is not mandatory, "the failure to give a preference under such a plan cannot be used to support an allegation of discrimination in employment decisions." Citing Liao, the District Court held that TVA was under no obligation to give Long preferential treatment. We agree and hold that defendants' failure to follow TVA's voluntary affirmative action plan is not evidence of intentional discrimination.
 
 
 17
 Lastly, plaintiff argues that TVA discriminated against her by not giving her thirty-day notice of the RIF of the annual painter position or the fifteen-day period within which to accept or reject the annual position offer. This is not evidence of discrimination, and the lack of notice did not harm plaintiff in any way. On August 25, 1988, plaintiff had received a notice of a RIF from her hourly position as painter foreman that was to be effective September 29, 1988, the same date that her annual painter position was to be terminated. Even if plaintiff had been selected in 1985 for the annual painter position, she still would have been terminated under the RIF on September 29, 1988.
 
 B. McDonnell-Douglas Test
 
 18
 Plaintiff cannot successfully prove a prima facie case under the McDonnell-Douglas test because she was not treated differently than similarly situated non-minority persons. Long complains that two white female painters with less service time than her continued to work after Long was terminated. The record shows that these two women were sign painters unlike Long who was a general painter. And while sign painters can do the work of general painters, the reverse is not true. Therefore, plaintiff was not similarly situated to the less senior non-minority sign painters.
 
 
 19
 Because plaintiff has failed to set forth a prima facie case of discrimination, we do not reach the issue of whether the TVA's implementation of the RIF of annual painters was a pretext for discrimination.
 
 IV.
 
 20
 Accordingly, we AFFIRM the District Court's grant of summary judgment to defendants.
 
 
 
 *
 The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation
 
 
 [1]
 Plaintiff claims that due to the unreasonable three-year delay in processing her initial complaint, she missed opportunities to be placed higher on the retention register because she was not afforded the opportunity of receiving better than fully adequate reviews of her work. Plaintiff is apparently arguing that if she had been working as an annual painter she might have achieved a higher place on the retention register and would not have been affected by the RIF. This claim is purely speculative