89 F.3d 835
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jefferson SMITH, Jr., Plaintiff-Appellant,
v.
Janet RENO, Attorney General, U.S. Department of Justice,
and Louis J. Freeh, Director, Federal Bureau of
Investigation, Defendants-Appellees.
 No. 95-5133.
 United States Court of Appeals, Sixth Circuit.
 July 1, 1996.
 
 Before: KENNEDY and COLE, Circuit Judges; COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Jefferson Smith Jr. appeals the district court's award of summary judgment in favor of defendants in his complaint alleging that agents and officials of the Federal Bureau of Investigation ("FBI") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., in discharging him from his employment with the FBI. After a careful review of the record, we affirm the order of the district court.
 
 I.
 
 2
 Jefferson Smith Jr., an African-American male, commenced employment as a Special Agent of the FBI in 1969. From 1978 until his termination, Smith served as the applicant coordinator for the Memphis, Tennessee office. Smith's responsibilities, which included the recruitment of agents and other employees, required frequent travel throughout western Tennessee. Smith's travel expenses were reimbursed upon submission of vouchers to the FBI office.
 
 
 3
 In May 1988, Katherine A. Black, an FBI employee responsible for processing travel vouchers, discovered a discrepancy in one of Smith's vouchers. Black reported the discrepancy to John T. Kelley, Jr., the Assistant Special Agent-in-Charge of the Memphis office. Kelley brought the matter to the attention of William D. Fallin, the Special Agent-in-Charge of the Memphis office, who also served as Smith's supervisor. Fallin examined selected vouchers previously submitted by Smith and determined that a more detailed investigation was warranted. Fallin directed Kelley to investigate Smith's travel vouchers for that fiscal year. Kelley, with Black's assistance, undertook a confidential review of Smith's vouchers and related documents.
 
 
 4
 In October or November 1988, Kelley solicited the assistance of Monte E. Smith, an FBI Supervisory Special Agent, because of his experience as an accountant and member of the FBI's Inspection Staff; and because Monte Smith would provide a second, independent review. Fallin approved Monte Smith's involvement in the investigation. Kelley and Monte Smith ultimately concluded that Smith had submitted false travel vouchers on various occasions between October 1987 and January 1989, and reported their conclusion to Fallin. Fallin thereupon asked Smith to meet Kelley and Monte Smith on January 10, 1989 at a Memphis hotel, so as to preserve the confidentiality of the investigation and Smith's privacy. At the beginning of the meeting Smith was informed of the investigation, advised of his constitutional rights and given the opportunity to obtain counsel. Smith was then questioned about his vouchers. On the second day of the interview, Smith signed a 24-page statement admitting the submission of fraudulent vouchers and unauthorized use of a government vehicle. Specifically, Smith admitted that over a 15-month period he submitted: (i) at least 13 fraudulent claims for mileage reimbursement totaling over $1,200; (ii) 12 fraudulent claims for travel expenses for dates he was not on official travel status; (iii) a fraudulent claim for $300 in "convention expenses"; and (iv) a forged receipt for $175. Smith also admitted that he misused his FBI vehicle for unauthorized personal trips on at least two occasions.
 
 
 5
 In February 1989, Fallin recommended punishment compromising full restitution, probation for one year, suspension without pay for two weeks and demotion of one grade. Fallin's recommendation was forwarded to FBI headquarters in Washington, D.C., as were the results of the Memphis office's investigation. Review of the matter was delegated to Agent Couns in the FBI's Administrative Services Division.
 
 
 6
 Couns compared Smith's case with four similar cases where an agent either stole or misused between $500 and $11,800 in government monies. In each of these cases, the agent was dismissed or resigned in lieu of dismissal. Couns recommended Smith's termination due to the seriousness of his misconduct. Couns' supervisors agreed with his recommendation but gave Smith one last opportunity to present an oral appeal of his proposed dismissal. A meeting was held between FBI representatives and Smith, but Smith presented no acceptable basis for his retention as an agent. Smith was informed of his dismissal by letter dated May 26, 1989.
 
 
 7
 Plaintiff filed this action on June 28, 1993 in the Western District of Tennessee alleging violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. Both parties filed motions for summary judgment. The district court granted summary judgment in favor of the defendants, reasoning that Smith failed to establish a prima facie case of discrimination under Title VII.
 
 II.
 
 8
 We conduct a de novo review of the district court's award of summary judgment. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
 
 
 9
 It is well-established that the burden is on the plaintiff to establish a prima facie case of racial discrimination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-254 (1981). A plaintiff can establish a prima facie case by showing that i) he was a member of a protected class; ii) he was discharged; iii) he was qualified for the position; and iv) he was replaced by a person outside the protected class. See McDonnell Douglas Corp., 411 U.S. at 802. A plaintiff can also establish a prima facie case of discrimination by showing, in addition to the first three elements, that a comparable non-protected person was treated better. See Mitchell v. Toledo Hospital, 964 F.2d 577, 582-83 (6th Cir.1992). If a plaintiff claims race discrimination on the basis of such "disparate treatment", he must produce evidence which establishes: i) that he was a member of a protected class; and ii) that for the same or similar conduct he was treated differently from similarly situated, non-minority employees. Id.; Davis v. Monsanto Chemical Co., 858 F.2d 347-348 (6th Cir.1988), cert. denied, 490 U.S. 1110 (1989). A plaintiff always bears the ultimate burden of proving racial discrimination. Burdine, 450 U.S. at 253.
 
 
 10
 Smith contends that the district court's grant of summary judgment was improper because he established a prima facie case of disparate treatment under the standard set forth in Mitchell. Smith claims that his discharge, rather than probation or suspension, constitutes prima facie evidence that he was treated differently from similarly situated non-minority employees. In Mitchell this court, in assessing the "similarly situated" criterion, concluded:
 
 
 11
 "Thus to be deemed "similarly-situated", the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."
 
 
 12
 Mitchell, 964 F.2d at 583.
 
 
 13
 Accordingly, the standard is "similarly situated in all respects". Id.
 
 
 14
 In arguing that he was treated differently from similarly situated non-minority employees, Smith points to other cases where agents charged with misuse of government monies were treated leniently. Of the seven cases cited by Smith which he believes prove disparate impact, only three--those involving voucher fraud--are comparable. The other four simply are not analogous. In one of the three analogous cases, an agent working undercover for the first time submitted false laundry and grocery receipts and transported an unauthorized passenger in a government vehicle. In the second case, an agent submitted false vouchers for one trip. In the third case, an agent submitted a false voucher in the amount of $18.50. These three cases are distinguishable from Smith's misconduct because they involve a relatively small amount of money and none involve an experienced FBI agent in a long-term scheme to defraud the government. Thus, Smith has not established that he was treated more harshly than other FBI agents charged with similar offenses.
 
 
 15
 However, even if Smith had shown that other FBI agents had received less severe punishment for similar conduct, he has failed to establish that the other agents were similarly situated in all respects. On the contrary, there is no evidence that the allegedly comparable agents dealt with the same supervisor or engaged in the same conduct without differentiating or mitigating circumstances. In fact, the other agents' misconduct was differentiated by the FBI from the more serious misconduct of Smith. As a result, we conclude, as did the district court, that Smith failed to establish a prima facie case of race discrimination based on disparate treatment.
 
 
 16
 Even if Smith had established a prima facie case of disparate treatment, the burden of production, not persuasion, shifts to the employer to articulate some legitimate, non-discriminatory reason for the employee's discharge. McDonnell Douglas Corp., 411 U.S. at 802. Here the government had a legitimate non-discriminatory reason for discharging Smith, i.e. Smith intentionally defrauded the government over a 15-month period and misappropriated over $2,500. Moreover, the evidence established that the FBI handled Smith's case in the same manner as it handled similar cases of agent fraud. Specifically, the FBI identified four misconduct cases similar to Smith's voucher fraud where agents misappropriated funds. In each of these cases, the agents were disciplined in the same manner: they were dismissed or resigned pending investigation.
 
 
 17
 Because the FBI articulated a legitimate non-discriminatory reason for Smith's termination, Smith had to establish that the proffered reason was pretextual in order to withstand summary judgment. See Burdine, 450 U.S. at 255-256. Pretext may be shown "either directly by persuading the [trier of fact] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1082 (6th Cir.1994) (quoting Burdine, 450 U.S. at 255.)
 
 
 18
 To make a submissible case on the credibility of the employer's explanation, the plaintiff is required to show by a preponderance of the evidence either: (1) that the proffered reasons had no basis in fact; (2) that the proffered reasons did not actually motivate his discharge; or (3) that they were insufficient to motivate discharge. Id. at 1084.
 
 
 19
 Here, Smith does not claim that the proffered reasons had no basis in fact or that they were insufficient to motivate his discharge. Rather, Smith claims that the proffered reasons are not the real reasons for his discharge. He asserts that the real reason for his discharge is his race. Smith states that the investigation and interview process (which excluded his immediate supervisor, an African-American) is evidence of discriminatory animus. However, Fallin's explanation for the manner in which the investigation was conducted shows no discriminatory animus. It shows, to the point, that the proffered reasons had a basis in fact and motivated his discharge. In short, Smith failed to produce any evidence, either directly or indirectly, that the FBI intended to discriminate against him on the basis of race.
 
 
 20
 For the foregoing reasons, the district court's decision to grant summary judgment in favor of the government is hereby AFFIRMED.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation