[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
10/28/98
THOMAS  K. KAHN
CLERK

No. 97-5121

D. C. Docket No. No. 96-1082-CV-LCN

RED MENDOZA,

Plaintiff-Appellant,

versus

BORDEN, INC., d.b.a. Borden's Dairy,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Florida

**(October 28, 1998)**

Before TJOFLAT, BARKETT and MARCUS, Circuit Judges.

BARKETT, Circuit Judge:

Appellant Red Mendoza appeals from an adverse ruling of the district court granting Borden's motion for summary judgment on Mendoza's Age Discrimination in Employment Act ("ADEA") claim, her Title VII retaliation claim, and her state law employment discrimination and emotional distress claims. She also appeals from a directed verdict on her Americans with Disabilities Act ("ADA") claim and her Title VII sexual harassment claim. On appeal, she

contends that she introduced sufficient evidence at trial to support a jury verdict in her favor on her sexual harassment and disability discrimination claims, and presented sufficient evidence to go to trial on her other claims. We affirm the district court summary judgment rulings and its grant of a directed verdict on Mendoza's ADA claim, but reverse the directed verdict on her Title VII sexual harassment claim.

Mendoza worked for Borden for a period of sixteen months. She started as a temporary employee in 1993, but became a permanent employee in 1994. In April 1995, Mendoza was terminated. In April 1997, she filed this action against Borden, alleging that she was constructively discharged as a result of Borden's discriminatory treatment of her. The district court granted Borden summary judgment on all of Mendoza's claims but two, permitting her sexual harassment and ADA claims to go to trial. At the conclusion of Mendoza's case-in-chief, the district court, however, granted Borden's motion for a directed verdict. This appeal followed.

I.

Summary Judgment on ADEA, Title VII Retaliation, and State Law Claims

Mendoza first argues that the district court erred in concluding that she had failed to make out a prima facie case of age discrimination in violation of the ADEA. Mendoza's age discrimination claim, as alleged in her complaint, is that she was denied a promotion or raise based on age, denied a modification in her work schedule, and subjected to disparate treatment based on age. The district court, however, correctly found that Mendoza did not show that there were  promotions available while she was at Borden, and that there was nothing in the record –

2

other than a conclusory statement in her affidavit – to show that she was subject to age discrimination. Accordingly, because Mendoza failed to come forward with significant probative evidence of age discrimination, we affirm the district court's grant of summary judgment on this claim. See LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir. 1998). We likewise affirm the grant of summary judgment to Borden on Mendoza's Title VII retaliation claim because in this claim as well Mendoza failed to come forward with sufficient probative evidence to defeat a motion for summary judgment.

Turning to the state law claims, Mendoza argues that the district court erred in granting summary judgment to Borden on Mendoza's claim under the Florida Civil Rights Act. The district court granted summary judgment on this claim because Mendoza failed to file a complaint with the Florida Commission on Human Relations. The law requires that this administrative remedy be pursued before filing a civil action. See Blount v. Sterling Healthcare Group, Inc., 934 F. Supp. 1365, 1369-70 (S.D. Fla. 1996) (collecting cases). Mendoza's argument that her filing of an EEOC charge was sufficient to satisfy any exhaustion requirement is unavailing. Under Florida law, Blount makes clear, no state law claim under the Florida Civil Rights Act of 1992 may proceed until a complaint is filed with the FCHR. Because Mendoza failed to do so, the district court correctly granted summary judgment to Borden on this claim.

Finally, Mendoza argues that the district court erred in granting summary judgment to Borden on her intentional infliction of emotional distress claim. Under Florida law, this tort has four elements: "1) deliberate or reckless infliction of mental suffering; (2) by outrageous conduct; (3) which conduct must have caused the suffering; and (4) the suffering must have been severe." Hart v. United States, 894 F.2d 1539, 1548 (11th Cir. 1990). As the district court

3

recognized, Mendoza's allegations are not sufficient to meet this very demanding standard. See Blount, 934 F. Supp. at 1370-71 (finding that plaintiff had failed to show that she was subjected to relentless physical and verbal harassment). Accordingly, the district court did not err in granting summary judgment to Borden on this claim.

II.

Directed Verdict on ADA and Title VII Sexual Harassment Claims

We next turn to consider Mendoza's argument that the district court erred in granting a directed verdict on her ADA claim. In order to prevail on this claim, Mendoza must establish that she was an individual with a disability within the meaning of the ADA. The ADA defines "disability" as either "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," or "a record of such an impairment," or "being regarded as having such impairment." 42 U.S.C. § 12102(2).

The ADA regulations define "major life activities" to include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(h)(2)(i). With regard to the major life activity of work, on which Mendoza relies, the regulations define the term "substantially limits" to mean

> significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

§ 1630.2(j)(3)(i). In applying this definition, the regulations tell us to consider the nature and severity of the impairment; the duration or expected duration of the impairment and the permanent or long-term impact of the impairment. § 1630.2(j)(2).

4

We agree with the district court that Mendoza failed to introduce evidence that she was an individual with a disability under the ADA. Mendoza only introduced evidence showing that she had an impairment that prevented her from lifting objects over five to seven pounds. She

> has presented no evidence to show that she cannot perform a broad range or class of jobs; instead, she simply makes the vague assertion that she is unable to perform any job that [requires her to lift more than seven pounds]. . . . Although a plaintiff seeking recovery under the ADA is not required to provide a comprehensive list of jobs which she cannot perform, the person must provide some evidence beyond the mere existence and impact of a physical impairment . . . .

Swain v. Hillsborough County School Bd., 146 F.3d 855, 858 (11th Cir. 1998). Because no reasonable jury could have concluded that Mendoza had a disability within the meaning of the ADA, the district court correctly granted a directed verdict for Borden.

We reach a different result, however, on Mendoza's Title VII sexual harassment claim. "'When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and creates an abusive working environment, Title VII is violated.'" Oncale v. Sundowner Offshore Servs., Inc., 118 S. Ct. 998, 1001 (1998) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)). "This standard," the Supreme Court has told us, "takes a middle path between making actionable any conduct that is merely offensive and requiring the conduct to cause a tangible psychological injury. . . . [T]he very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees . . . offends Title VII's broad rule of workplace equality." Harris, 510 U.S. at 21-22.

The elements of a Title VII sexual harassment claim are the following: 1) the employee must belong to a protected group; 2) the employee must have been subject to unwelcome sexual

5

harassment; 3) the harassment must have been based on sex; 4) the harassment must have been sufficiently severe or pervasive to alter the terms and conditions of employment; and 5) there must be a basis for holding the employer liable for the harassment either directly or indirectly. See Henson v. City of Dundee, 682 F.2d 897, 903-05 (11th Cir. 1982). Whether an employee can satisfy his or her burden of showing that the work environment is hostile or abusive is a fact-specific question, requiring analysis of all the circumstances. Harris, 510 U.S. at 23.

To review the grant of a directed verdict, we must take all the evidence and reasonable inferences drawn from the evidence in the light most favorable to Mendoza, the non-moving party. A directed verdict is only proper where "[t]he facts and inferences . . . 'so overwhelmingly favor the verdict' that no reasonable juror could reach a contrary decision." Bivens Garden Office Bldg., Inc. v. Barnett Banks of Florida, Inc., 140 F.3d 898, 905 (11th Cir. 1998) (quoting Hibiscus Assoc. v. Board of Trustees, 50 F.3d 908, 920 (11th Cir. 1995)). Thus, to affirm the directed verdict, Borden must show that no reasonable juror could have concluded that the conduct complained of constituted actionable sexual harassment in violation of Title VII. On this record, Borden has failed to make this showing.

Mendoza's testimony, essentially unrebutted, was that her supervisor, Dan Page – the highest ranking executive at Borden's Miami facility – "constantly" followed her around the office and the hallways of the Borden's plant, staring at her and looking her up and down in a sexually suggestive manner. Mendoza also testified that, on two occasions, Page stared at her groin area and made a sniffing sound, and another time, rubbed his hip against hers, while touching her shoulder. Mendoza also asserts that Page made inappropriate comments, noting that he once told her, "I'm getting fired up" when she came into his office.

Borden argues that Mendoza's testimony was insufficient to establish her Title VII claim because Page's alleged conduct involved only sporadic and innocuous interactions with no sexual or otherwise gender-related abusive overtones. To determine whether Mendoza's testimony is sufficient to support a jury verdict, all of Page's actions must be viewed together to assess whether a jury could conclude that his conduct created a hostile work environment. As we have noted, "[a] hostile environment claim is a single cause of action rather than a sum total of a number of mutually distinct causes of action to be judged each on its own merits," making it improper to "examine each alleged incident of harassment in a vacuum." Vance v. Southern Bell Tel. & Tel. Co., 863 F.2d 1503, 1510-11 (11th Cir. 1989) (holding that it was error for the district court to require plaintiff to establish a claim as to each allegation of harassment).

Although we doubt that a simple assertion that a supervisor stared at or touched an employee, without more, would support a claim of sexual harassment, such an allegation might be sufficient when considered in conjunction with testimony concerning other acts alleged by the plaintiff. Physical contact, for example, can occur in many different contexts in the workplace. It may be accidental, innocent, or actionable, depending on how it occurred or whether and what kind of other acts the plaintiff alleges as well as the social context of the particular workplace. As Justice Scalia explained in Oncale, Title VII's objective standard

> requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. A professional football player's working environment is not severely or pervasively abusive, for example, even if the coach smacks him on the buttocks as he heads onto the field – even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.

7

Oncale, 118 S. Ct. at 1003. To consider a supervisor's act of touching or excessively staring at an employee in isolation from the entire context of the workplace disserves Title VII's "broad rule of workplace equality," Harris, 510 U.S. at 22, making it likely that subtler forms of sex discrimination will go uncorrected. See Draper v. Coeur Rochester, Inc., 147 F.3d 1104, 1109 (9th Cir. 1998) ("Discriminatory behavior comes in all shapes and sizes, and what might be an innocuous occurrence in some circumstances may, in the context of a pattern of discriminatory harassment, take on an altogether different character, causing a worker to feel demeaned, humiliated, or intimidated on account of her gender.").

We conclude that the totality of Mendoza's testimony was sufficient to survive Borden's motion for a directed verdict. Mendoza's testimony that Page stared at her and looked her up and down all the time in a sexually suggestive manner is given context and substance by her testimony concerning the two incidents in which she asserted that Page stared at her groin area while making a sniffing sound. Based on her account of the frequency and intensity of Page's unrelenting stares and looks, together with her allegations of his more egregious sexual conduct, we cannot say that, as a matter of law, Page's conduct was insufficient to create a hostile work environment. Based on Mendoza's entire testimony, a jury could find that Page's conduct was pervasive, unwelcome, and unreasonably interfered with Mendoza's work performance, subjecting her to a sexually abusive work environment. See Vance, 863 F.2d at 1511 ("'[A]ll that the victim of [sexual] harassment need show is that the alleged conduct constituted an unreasonably abusive or offensive work-related environment or adversely affected the reasonable employee's ability to do his or her job'") (quoting Davis v. Monsanto Chemical Co., 858 F.2d 345, 349 (6th Cir. 1988)); see also Harris, 510 U.S. at 25 (Ginsburg, J., concurring) ("It

8

suffices to prove that a reasonable person subjected to the discriminatory conduct would find . . . that the harassment so altered working conditions as to 'ma[k]e it more difficult to do the job.'") (quoting Davis, 858 F.2d at 349). Further, a jury could conclude that Mendoza was subject to Page's stares and other conduct because of sex; "but for her sex, [Mendoza] would not have been subjected to sexual harassment." Henson, 682 F.2d at 904. It may well be that, after trial, a jury will conclude that Mendoza was not subject to sexual harassment that was sufficiently severe or pervasive as to create a hostile work environment, but that is for the jury to determine. She has presented sufficient evidence to survive Borden's Rule 50(a) motion. See Allen v. Tyson Foods, Inc., 121 F.3d 642, 647-48 (11th Cir. 1997); see also Gallagher v. Delaney, 139 F.3d 338, 347 (2d Cir. 1998) ("Evaluation of ambiguous acts such as those revealed by the potential evidence in this case presents an issue for the jury.").

The last issue we must consider is whether Mendoza has introduced sufficient evidence to hold Borden liable for Page's conduct. In Faragher v. City of Boca Raton, 118 S. Ct. 2275 (1998), the Supreme Court held that "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." Id. at 2292-93. There is no question here that Page was such a supervisor. However, the Court also permitted an employer to defend against a hostile work environment claim – one where no tangible employment action was taken – by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer

9

or to avoid harm otherwise." <u>Id.</u> at 2293.  Thus, on remand, Borden will have the opportunity to establish whether the affirmative defense outlined in <u>Faragher</u> would apply.

Accordingly, the judgment of the district court is AFFIRMED IN PART AND REVERSED IN PART and the case is remanded to the district court for a new trial on Mendoza's Title VII sexual harassment claim.